**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| ADAM HILL ) | |
| 12851 State Road 33 ) | |
| Groveland, FL  34736 ) | Case No: |
| ) | |
| TODD ASHTON HARVILLE ) | |
| 2351 GA Hwy 24, Unit A ) | |
| Statesboro, GA  30461 ) | |
| ) | |
| DAVID BOND ) | |
| 3540 Montana Road ) | Count I:  Declaratory Relief |
| Buford, GA  30519 ) | Count II:  Breach of Contract, Express & |
| ) | Implied; Unjust Enrichment |
| BRANDON ALBERS ) | Count III:  Intentional & Negligent |
| 1003 Craven Str. ) | Misrepresentation:  Fraud in the Inducement |
| Indian Trail, NC  28079 ) | Count IV:  Intentional & Negligent |
| ) | Misrepresentation After Contract |
| CARL TURNER ) | Count V:  Breach of Contract, Express & |
| 316 Avenida De Leon ) | Implied, Covenant of Good Faith & Fair |
| Abilene, TX  79602 ) | Dealing |
| ) | Count VI:  Fraudulent & Deceptive Trade |
| JASON GARBER ) | Practices under FDUTPA |
| 25 Iron Gate Dr. ) | Count VII:  Civil Conspiracy, Prima Facie |
| Beaufort, SC  29906, ) | Tort |
| ) | Count VIII:  Promissory Estoppel/ |
| JAMES McDONALD ) | Detrimental Reliance |
| P.O Box 1153 ) | Count IX:  Unjust Enrichment |
| Bedford, TX  76095 ) | Count X:  Quantum Meruit |
| ) | Count XI:  Preliminary & Permanent |
| JARROD J. RICCIO, ) | Injunctive Relief |
| 75 Dewolf Ave. ) | |
| Bristol, RI  02809 ) | |
| ) | **Demand for Jury Trial** |
| JON P. DUMMERMUTH ) | |
| 83 Leafwood Lane, # 221 ) | |
| Groton, CT  06340 ) | |
| ) | |
| MICHAEL WHITE, ) | |
| 8141 Hwy 198E ) | |

1

Lucedale, MS  39452                    )
                                       )
RODNEY PIERCE                          )
49 Simpson Rd.                         )
Greenville, MS  38701,                 )
                                       )
RYAN D. WHEELER                        )
112 Canal Str.                         )
Horseheads, NY  14845                  )
                                       )
SAMUEL J. MATYCHAK III                 )
220 Marion Oaks Trail                  )
Ocala, FL  34473,                      )
                                       )
WES COOK                               )
2777 Greely Chapel Rd.                 )
Lima, OH  45806,                       )
                                       )
SHANE L. ZIMMERMANN                    )
3260 Toscana Dr.                       )
Saint Cloud, FL  34772,                )
                                       )
ERICH V. EBERT                         )
15116 Sunrise Dr.                      )
Bainbridge Island, WA  98110           )
                                       )
BRIAN KANIS                            )
404 W. CO Road B-2                     )
Saint Paul, MN  55113                  )
                                       )
OSCAR RENE MENDIOLA                    )
P.O. Box 34                            )
Benavides, TX  78341                   )
                                       )
JASON FASEL                            )
2307 Fair Oaks Dr.                     )
Austin, TX  78745                      )
                                       )
BLAKE M. SCOTT                         )
1026 NE Coriander Loop                 )
Pinetta, FL  32350                     )
                                       )

2

ADAM HORSKY                              )
28 Huxley Circle                         )
Abingdon, MD  21009                      )
                                         )
DAVID LLOYD JOBES                        )
24314 Preakness Dr.                      )
Damascus, MD  20872                      )
                                         )
STEVE RIVERA                             )
220 Marion Oaks Trail                    )
Ocala, FL 34473                          )
                                         )
TIMOTHY J. FOLEY JR.                     )
1615 N. Covington                        )
Wichita, KS  67212                       )
                                         )
TYLER GOODERE                            )
146 Peary Ct #B                          )
Key West, FL  33040                      )
                                         )
TIMOTHY N. DRALLE                        )
3175 Mtn Meadows Rd.                     )
Helena, MT  59602                        )
                                         )
DAVID TILBURY                            )
1422 Park Maple Dr.                      )
Katy, TX  77450                          )
                                         )
MICHAEL R. BROWNING                      )
102 Rolling Hills Dr.                    )
Williamsburg, VA  23185                  )
                                         )
Individually and on behalf of similarly )
Situated persons,                        )
                                         )
                                         )
            Plaintiffs,                  )
                                         )
         v.                              )
                                         )
WACKENHUT SERVICES                       )
INTERNATIONAL, aka,WACKENHUT             )

3

SERVICES, INC., aka, WACKENHUT          )
SERVICES, LLC,                          )
SERVE:                                  )
Registered agent:                       )
Prentice Hall Corporation System, Inc.  )
1090 Vermont Avenue N.W.                )
Washington, D.C.  20005                 )
                                        )
                                        )
KELLOGG-BROWN                          )
& ROOT, LLC, AKA KELLOGG-BROWN )
& ROOT INTERNATIONAL, DBA KBR          )
TECHNICAL SERVICES, KBR, INC.,         )
KELLOGG BROWN & ROOT, AKA S.           )
de R.L.; OVERSEAS ADMINISTRATIVE )
SERVICES; DBA SERVICE EMPLOYEES )
INTERNATIONAL CORP,                    )
SERVE:                                  )
Registered agent:  Capitol Corporate    )
Services, Inc.                          )
1090 Vermont Ave. N.W., Suite 910      )
Washington, D.C.  20005                )
                                        )
HALLIBURTON CORP,                      )
SERVE:                                  )
Registered agent:  CT Corporation Systems  )
1015 15th Street NW, Suite 1000        )
Washington, D.C.  20005                )
                    <u>Defendants</u>.              )
_____)

## COMPLAINT  FOR DAMAGES
## AND DECLARATORY AND INJUNCTIVE RELIEF

### <u>I. PRELIMINARY STATEMENT</u>

Plaintiffs, individually and on behalf of all persons similarly situated, for their complaint

allege:

1.      This is an action arising under (1) the Class Action Fairness Act (CAFA), U.S.C. § 1332(d)(2)-(6); (2) the common law of fraud, civil conspiracy to commit fraud; (3) the common law of breach of contract, (4) the common law of tortuous breach of the covenant of good faith and fair dealing; (5) breach of contract under the laws of Florida; (6) wage and hour violations under the laws of Florida; (7) consumer protection violations under the Florida Deceptive Trade Practices Act and District of Columbia Consumer Protection Act, allowing for recovery of punitive damages, treble damages, and attorney's fees; (8) declaratory judgment under 29 U.S.C. § 220; and (9) Injunctive relief under the Court's equitable powers to grant preliminary and permanent injunctions in order to prevent irreparable harm to Plaintiffs and to those similarly situated, and in order to require Defendants to comply with their legal obligations here and around the world, as to all past, present and future individuals who work in support of America's wars for Defendants.

2.      This complaint alleges actions and omissions of Defendants, in conspiracy with each other, and individually, done to defeat the right of American Citizens to receive their lawful wages required by government contracts—including in-country pay, danger pay, on-call pay, up-lift pay, overtime, and other benefits and compensation.  The government contracts were entered into with KBR/Halliburton/SEII and related companies (hereafter collectively "KBR") under the U.S. Army's Logistics Civil Augmentation Program (LOGCAP).  These government contracts, running from 2001 to present, include the provision of firefighter services in Iraq and Afghanistan.  KBR in turn subcontracted for Wackenhut Services International, Wackenhut Services, Inc., Wackenhut Services, LLC (hereafter collectively "WSI") to provide the firefighter

services.  The LOGCAP required KBR and related companies to provide "continuous 24-hour …

fire prevention and suppression functions for U.S. owned and/or leased facilities, structures, and

airfield/aircraft rescue firefighting services."

3.      This action seeks to obtain back pay for all persons currently working in Iraq or

Afghanistan for Defendants as firefighters, or who worked for Defendants from 2005 to the

present, as firefighters on American or foreign bases in connection with contracts with the

United States, and the U.S. Departments of Defense, the Pentagon, the U.S. Army or other

branches of the armed services of the United States in support of Defense Bases in Iraq, Kuwait,

Afghanistan or other bases in support of the Operations in Afghanistan or Iraq.

4.      Defendants promised to pay up-pay, overtime and on-call pay to these

firefighters in order to induce them to leave their families in the United States and work under

harsh conditions in Iraq and Afghanistan.  Plaintiffs are informed and believe and thereon allege

that Defendants KBR oversaw and controlled WSI in WSI requiring Plaintiffs to work long

hours, be on-call, and to perform extra services not described in Plaintiffs' contracts.  One of

those contracts under which WSI subcontracted and some of the Plaintiffs worked was KBR

Contract 304-3-4-SSUB-MA0004.

5.      Upon promising employment to Plaintiffs and those similarly situated to

Plaintiffs, WSI brought Plaintiffs to Houston to a KBR's facility for orientation and in-

processing.  While there, WSI and KBR presented contracts on a take-it-or-leave-it basis, only

after Plaintiffs had taken measures to leave the country to work in Iraq or Afghanistan.  Plaintiffs

are informed and believe, and thereon allege, that the same procedure was applied to over 2,000

other firefighters sought to be included in Plaintiffs' class herein.

6.      Plaintiffs and those similarly situated were required to waive valuable and

substantive rights under false pretenses by submitting to class arbitration under the Federal

Arbitration Act.  This submission was unconscionable because the contracts improperly set forth

a right of WSI to require arbitration, but the requirement was not related to any specific

provision giving rise to arbitration.

### Class Action Arbitration Settlement & Opt Out Procedures

7.      Certain members of the class of which Plaintiffs are representatives brought a class action

arbitration in Florida under these contracts.  The two arbitrations were styled Grabowski, et al. v.

Wackenhut Services, LLC, et al., JAMS Reference No. 090806B, and Mahnke, et al. v. Wackenhut

Services, LLC, JAMS Reference No. 090507A.  An arbitration class was certified, and a settlement

reached in which those who did not opt out would receive approximately $1,500 each, the representative

plaintiffs would receive several times more, and the lawyers for plaintiffs would receive $1,000,000.

8.      Plaintiffs and many others similarly situated opted out of that class since the

$1,500 was grossly inadequate to compensate them for the several years of uncompensated for

work, uncompensated for work averaging $40,000 or more, exclusive of penalties, interest, treble

damages, and civil penalties.  For some, the lost pay was over $200,000.  Thus, the $1,500 does

not even equal the prejudgment interest from the time the wages and other benefits were due.

9.      Certain plaintiffs and many others similarly situated were never informed of the

right to opt out of settlement and thus could not opt out.

10.     Furthermore, the terms and conditions for opting out, when provided, were so confusing and burdensome that many did not understand the deadlines and could not opt out, or did not opt out because the procedure was burdensome in requiring individuals to copy down in their handwriting a lengthy formula.  The opt-out notice was biased and improperly weighed toward discouraging persons from opting out.  It played up the good aspects of the settlement and emphasized the difficulties of opting out or of questioning the fairness of the settlement.  It required people to write out in long hand a lengthy statement of opting out and was confusing and discouraging to an average and reasonable person.

11.     The claim form for claiming a settlement of the arbitration for one year of back wages prior to February 1, 2009, seeks to have claimants such as Plaintiffs release not only WSI but also KBR and its affiliated companies.

12.     The lawyers and class representatives spoke with some of the Plaintiffs and those similarly situated by telephone and/or via the internet, and informed them that they would never be able to get more money because the discovery showed there were problems with the case. When questioned about what the discovery actually showed, the attorneys and the representatives would not disclose the information.

13.     Further, numerous firefighters were not notified at all of the proposed settlement or right to opt out, including Plaintiffs Shane L. Zimmermann, and those similarly situated who worked overseas at the time of the notice of settlement in 2010.

14.     The following plaintiffs filled out the opt out form and sent it in to the listed address:

Erich V. Ebert, Jon P. Dummermuth, Rodney Pierce, Brian Kanis, Todd Ashton Harville, Wesley L. Cook, James McDonald, Oscar Rene Mendiala, Jason Fasel, Brandon M. Albers, Adam Hill, Carl Turner, David Bond, Blake M. Scott, Adam Horsky, Michael R. Browning, David Lloyd Jobes, Steve Rivera, Timothy J. Foley Jr., Tyler Goodere, Timothy Dralle, David Tilbury, Jason Garber, Jarrod J. Riccio, Michael White, Ryan D. Wheeler, and Samuel J. Matychak III.

15.     As a result of the deficiencies, the settlement of the class was improper and inadequate and should be set aside.

**Unfair Working Conditions**

16.     The Plaintiffs had to work long hours, be on call sometimes for 24 hours, and were not free to go where they wanted to or even to sleep.  They had to carry pagers even during sleep hours.  They were subject to being called out on fires or other emergencies, sometimes for only a few minutes, sometimes for hours at a time.  They were compensated for none of these extra services.  Plaintiffs and those similarly situated were required to provide 24/7 fire protection, but there was only pay for 12 hours of fire protection.  In short, Defendants did not employ two crews per day, but rather one, while at the same time contracting with Plaintiffs for only 12 hours of work.  Defendants required Plaintiffs to perform assignments above their pay grades.

17.     Some Plaintiffs were required to perform services of firefighter as lieutenants or captains and other officers, or to perform as "acting" in these ranks, but were not paid commensurate with their duties and classification as promised by Defendants.

18.     Plaintiffs were placed on-call in a manner that was essentially on-duty at the fire stations by requiring the Plaintiffs and those similarly situated to have walkie talkies to their ear during sleep and to hear all of the traffic on base coming through, thus making it difficult to sleep, and frequently calling them out on a fire or other emergency only to send them back to bed in the middle of the night, making it difficult or impossible to sleep. They were not paid for their on-call working hours because Defendants used a ruse to deny them pay by determining that they were not on call or otherwise working even when they were called out and forced to listen to traffic all night in case they were needed for a potential fire, flight difficulty or other emergency.

19.     When Plaintiffs complained that they were being shorted pay, that they were being required by KBR to work on-call hours without pay, that KBR was commanding them around, WSI informed them that they were lucky to have jobs, that they would be fired and sent back to America, and that many were waiting in line for their jobs.  Various phrases were used as shorthand for threats to fire if the Plaintiffs continued to complain, such as "chicken or beef," which referred to the dining choices one had on the flight home from Iraq.

20.     Many of the Plaintiff firefighters and those similarly situated to this day live under fear of retaliation and firing if they complain about the breaches of contract and the failures to pay for their services.  Based on information and belief, Defendants bill the United States Government for these services performed by Plaintiffs, but refuse to compensate Plaintiffs for their time, on-call time, overtime, and other up-pay and benefits commensurate with their status and work.  And the United States does pay Defendants for this extra 24 hour work, but still Defendants refuse to pay Plaintiffs, but instead pocket the money.

10

21.     Indeed, Defendants KBR have been audited and found to have inflated their billings, and has been sued by the U.S. Department of Justice under  the False Claims Act for billing the government billions of dollars while falsely certifying hours or licensing.  See, e.g., reports that Defendant KBR falsely certified bills under the LOGCAP program in a suit by U.S. Justice Department.[1]  Plaintiffs are informed and believe, and thereon allege, that Defendant KBR committed acts of fraud in furtherance of a scheme to charge for their workers, and subcontractor workers work under the contract, but refuse to pay the same workers for their time, up-pay, on-call pay, and overtime pay.

## II. JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over the asserted claims under 28 U.S.C. § 1332(d)(2) (CAFA) because the parties are of minimally diverse citizenship and the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and because federal questions are raised.   The Court has personal jurisdiction over the Defendants because they are subject to the District of Columbia long-arm statute, D.C. Code § 13-423, because Defendants are present and transact business in the District of Columbia, and because acts and omissions complained of occurred, on information and belief, in the District of Columbia through contracts of Defendants with the U.S. Government, U.S. Departments of State, Defense, and such contracts were entered into in the District of Columbia or were to be partially performed in the District of Columbia.  The Defendants have minimum contacts with the District of Columbia through federal contracting for work in Iraq, Afghanistan and other foreign

---

[1] http://www.justice.gov/opa/pr/2011/February/11-civ-214.html and http://www.reuters.com/article/2010/04/02/us-kbr-lawsuit-idUSTRE63103W20100402, and http://www.legitgov.org/Federal-judge-rules-KBR-Iraq-false-claim-suit-can-proceed.

countries with the Department of Defense, the Department of State and other entities and

subdivisions of the United States government.  Defendant WSI owns Ronco Consulting with its

principle offices in the District of Columbia.  Many of the acts complained of had effects in the

District of Columbia or were made in the District of Columbia, including predicate acts,

representations of Defendants to committees of the United States Congress, as well as through

representatives of Defendants in the District of Columbia.

23.      Venue is proper in the United States District Court for the District of Columbia

under 28 U.S.C. § 1391(b) and (c).  All of the Defendants transact business in the District of

Columbia, maintain offices, or enter into government contracts here.

### III. PLAINTIFFS

24.      Plaintiffs are citizens of the United States who ,individually and on behalf of all

individuals similarly situated who worked for defendants, work for defendants or will work for

defendants on an American base overseas, who have been denied payment for time worked, up-

pay, overtime, and on-call time, as firefighters working for Defendants under contracts with the

United States government.

25.      Plaintiff Adam Hill worked for Defendant WSI from Jan 21, 2005 until Jan 20,

2006.

26.      Plaintiff Todd Ashton Harville worked for Defendant WSI from Sept 17, 2004

until Feb 5, 2009.

27.      Plaintiff Wesley L. Cook worked for Defendant WSI from June 2005 until June

2006.

28.     Shane Zimmermann worked for WSI from February 2008 to April 2010 in Iraq and has never received any official notice of a class action settlement or right to opt out.

29.     Plaintiff James McDonald worked for Defendant WSI from November 2005 until August 2009.

30.     Plaintiff Oscar Rene Mendiola worked for Defendant WSI from October 2004 until December 2006.

31.     Plaintiff Jason Fasel worked for Defendant WSI from February 2005 until October 2006, and from September 2007 until December 2007.

32.     Plaintiff Brandon M. Albers worked for Defendant WSI from September 2007 until September 2008, and from June 2009 until December 2009.

33.     Plaintiff Carl Turner worked for Defendant WSI from July 2004 until March 2006.

34.     Plaintiff David Bond worked for Defendant WSI from February 2005 until June 2007.

35.     Plaintiff Blake M. Scott worked for Defendant WSI from April 2005 until June 2007.

36.     Plaintiff Adam Horsky worked for Defendant WSI from June 9, 2008 until Nov 3, 2008.

37.     Plaintiff David Lloyd Jobes worked for Defendant WSI from January 2006 until January 2007.

38.     Plaintiff Steve Rivera worked for Defendant WSI from April 2005 until December 2008.

39.     Plaintiff Timothy J. Foley Jr. worked for Defendant WSI from June 2007 until June 2008.

40.     Plaintiff Tyler Goodere worked for Defendant WSI from March 2005 until March 2006, and from June 2006 until May 2007.

41.     Plaintiff Timothy N. Dralle worked for Defendant WSI from Sept 11, 2006 until May 18, 2009.

42.     Plaintiff David Tilbury worked for Defendant WSI from June 2004 until April 2007.

43.     Plaintiff Michael R. Browning worked for Defendant WSI for times to be proved at trial.

44.     Plaintiff Jason Garber worked for Defendant WSI from October 2004 until December 2006.

45.     Plaintiff Jarrod J. Riccio worked for Defendant WSI from April 2005 until April 2006, and from May 2007 until May 2008.

46.     Plaintiff Michael White worked for Defendant WSI from October 2006 until November 2008.

47.     Plaintiff Ryan D. Wheeler worked for Defendant WSI from September 2004 until January 2007.

48.     Plaintiff Samuel J. Matychak III worked for Defendant WSI from Feb. 5, 2005 until August 10, 2010.

## IV. DEFENDANTS

49.     Defendants are corporations who have been paid premiums through the United States Department of Defense, Department of State, or other departments of the United States under government contracts in which Defendant corporations who perform said work are required to purchase DBA insurance for each person working under a United States Government Contract, which insurance is added to the price of the contract and paid by the United States citizens through their taxes.  Each of these government contracts and subcontracts is made with the United States of America and requires all Defendants to abide by the laws of the United States under the DBA, and not to falsify their intentions of covering injuries occurring on their bases, or in furtherance of the work related to the presence of such contract employees on bases in Iraq, Afghanistan, or other places overseas.

50.     Defendant Wackenhut Services Incorporated is a security firm owned by G4S, which bought Ronco Consulting, and engages in various services under contracts with the United States government overseas.  Wackenhut's registered agent is Prentice Hall Corporation System, Inc.  Prentice Hall's address is 1090 Vermont Avenue, Washington, D.C. 20005

51.     Halliburton Corp. is a company with extensive government contracts in Afghanistan and Iraq that employs individuals who are covered by insurance under the Defense Base Act.  Halliburton's registered agent is CT Corporation System.  CT's address is 1015 15th Street N.W., Washington, D.C. 20005.  It owned KBR Technical Services, Inc., a company with extensive government contracts in Afghanistan and Iraq that employs individuals who are covered by insurance under the

15

Defense Base Act. KBR's registered agent is Capitol Corporate Services, Inc., 1090 Vermont Avenue N.W., Washington, D.C. 20005, as it owned Kellogg Brown & Root LLC, a company with extensive government contracts in Afghanistan and Iraq that employs individuals who are covered by insurance under the Defense Base Act.  Kellogg Brown & Root's registered agent is Capitol Corporate Services, Inc., 1090 Vermont Avenue N.W., Washington, D.C. 20005.  They owned an off shore company called Service Employees International, Inc, used as a shell to employ individuals in all of its government contracts with the United States with the above entities.

### V.  FACTUAL & LEGAL ALLEGATIONS COMMON TO ALL PARTIES

52.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 51 above.

53.     Plaintiffs worked for Defendants as Firefighters, Lieutenant Firefighters, Captain Firefighters, Crew Chiefs, and other supervisory or lead Firefighters during Defendant KBR's LOGCAP contracts, and Defendant WSI's subcontracts with KBR under LOGCAP with the United States in Iraq and Afghanistan and are among over 2,000 persons who have done so in support of the global War on Terror since 2001.  They signed annual contracts to work for Defendants under contracts with the United States Department of State and other departments such as the Department of Defense, providing firefighting and other services.  Numerous other similarly situated persons worked as WSI subcontractors, and other subcontracting companies, or direct employee firefighters for Defendant KBR under the LOGCAP agreements with the United States Government.   The contracts Plaintiffs and those similarly situated that Defendants required them to sign contracts that called for payment of a daily rate and in many cases a

completion or partial completion bonus.  All withholding or other payroll taxes were set forth as the responsibility of the contractor.

54.     It has been widely publicized that Defendant KBR has routinely failed to pay its employee combat truck drivers for regular pay, overtime and various types of up-pay, and Defendant KBR has settled some of those cases and in another an arbitrator has certified a class. These cases involve allegations that KBR pressured them to not record their hours, and work off the clock.[2]

55.     Over 4,000 individuals have been deprived of a minimum of between $20-50,000 in unpaid overtime, some over $100,000, on-call pay, up pay, and other unpaid wages, for a minimum of damages of $8,000,000, together with an amount from penalties, treble damages, liquidated damages, and punitive damages of over $20,000,000.

56.     Defendant WSI induced some Plaintiffs and those similarly situated with promises of up-pay, on-call pay, overtime pay, and promotion pay when Defendant would promote them to Lieutenant or Captain, with commensurate pay.  In numerous cases, Plaintiffs performed the duties of equivalent Lieutenant and Captain pay but were denied pay at those rates.

57.     Defendants concealed their scheme to refuse pay to the Plaintiffs and those similarly situated.

---

[2] See for example, http://www.law360.com/articles/242226/kbr-truckers-win-class-cert-in-arbitration-over-ot.

58.     Plaintiffs and many of those similarly situated came home wounded physically and psychologically from Iraq, Afghanistan, due to the war stress conditions, shelling, stressful working environments of 24/7 work on a defense base.

59.     Defendants began paying some overtime to Plaintiffs and those similarly, paying for 1 hour if firefighters went out for just 15 minutes, and if they stayed out on call for 1 hour and 5 minutes then they were paid 2 hours of overtime.  When Defendants saw Plaintiffs were claiming more overtime because Defendants were making Plaintiffs stand by for plane defueling, WSI adjusted the overtime to save them money.  Plaintiffs were routinely forced to work overtime, be on call, be awaiting airplanes or other assignments, but if they were out for under 7 minutes, Defendants would pretend no overtime was owing and they refused to pay any claimed overtime, breaching their agreements.

60.     Plaintiffs and those similarly situated complained to Defendant WSI of the failure to pay pursuant to the contracts all of the pay to which Plaintiffs and those similarly situated were entitled.  In response, agents and managers of Defendant WSI threatened Plaintiffs and those similarly situated.

61.     Agents and employees of Defendant KBR and Halliburton often took charge of Defendant WSI firefighter employees and required them to perform duties outside their contract, to perform duties outside the hours they were required to work under the contract, and to be on-call for numerous hours, overtime hours, and up-pay hours, but for which they were not paid. For example, the Plaintiffs and those similarly situated were required to do the following types of work but were not compensated pursuant to their contracts from 2005 to the present:

- Defendant KBR was required pursuant to LOGCAP logistics contracts with the United States to provide round the clock firefighting coverage, including services on-call, in the event of aviation accidents, fires, or other requirements on various bases throughout Iraq and Afghanistan.

- On numerous occasions KBR supervisors directed the actions of Plaintiffs who were employed by WSI, requiring them to perform work for KBR that was not included in their duties as firefighters or required under their contracts.

- Complaints concerning lack of pay or of having to perform work for KBR supervisors under KBR's direction, was discouraged heavily.  Any complaints from WSI workers was met with threats of being terminated, and Plaintiffs and others similarly situated were told, "You have two choices, aisle or window," or "Chicken or beef."  These sayings referred to the complaining Plaintiff losing his job and having to return to the United States, his only choice being the aisle or window seat on the plane home or the meal choice between chicken or beef on the flight home.  The intent of supervisors saying these things to Plaintiffs was that they had no choice, and that complaining of hours or wages, or other complaints, would be met with termination.

## THE PLAINTIFF CLASS

62.     Plaintiffs bring this action on behalf of themselves and the following Classes:

   a.   All persons who worked as firefighters who were denied overtime, on-call, up-
        pay, and other hazard pay who worked for WSI and KBR under the LOGCAP
        contracts from 2005 to the present in Iraq or Afghanistan under their contracts for
        on-call, on the clock, and off the clock work.

19

b.   All persons who worked as firefighters who were denied overtime, on-call, up-pay, and other hazard pay who worked for WSI and KBR under the LOGCAP contracts from 2005 to the present in Iraq or Afghanistan under promises from Defendants WSI or KBR to pay them for their on-call, off the clock, or on the clock work.

c.   All persons who worked as firefighters who were denied pay commensurate with the type or rank of firefighter they occupied or were required to fill, for overtime, on-call, up-pay, and other hazard pay who worked for WSI and KBR under the LOGCAP contracts from 2005 to the present in Iraq or Afghanistan under their contracts.

d.   All persons who worked as firefighters who were denied pay commensurate with the type or rank of firefighter they occupied or were required to fill, for overtime, on-call, up-pay, and other hazard pay who worked for WSI and KBR under the LOGCAP contracts from 2005 to the present in Iraq or Afghanistan under promises from Defendants WSI or KBR to pay them for their on-call, off the clock, or on the clock work.

63.      Plaintiffs bring this action pursuant to Rules 23(a) and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated throughout the United States who worked for Defendants from 2005 to the present who opted out of the above class arbitration or were never sent the opt out forms, or who were confused or did not have sufficient time to opt out or understand opting out was a real option.

64.      The above-described class is so numerous that joinder of all members is impracticable, i.e. just the WSI claimants are in excess of 2,000, and the Plaintiffs are informed and believe, and allege thereon, that the KBR claimants are likewise in excess of 2,000 firefighters for the period from 2005 to the present. Joinder of the members of the class is additionally impeded by geographic concerns because class members work and/or reside in several states as well as in Iraq or Afghanistan.

65.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether the Class was improperly denied overtime, up-pay, and on-call time as firefighters working for Defendants;

(b)     Whether Defendants breached their obligations willfully under Florida law;

(c)     Whether Defendants actions were deception and unconscionable under the Florida Deceptive and Unfair Trade Practices Act;

(d)     If so, whether the Class members are entitled to injunctive relief for the entire class, and also to recover benefits, treble damages, liquidated damages, interest, penalties, costs and attorneys fees, and to obtain declaratory and injunctive relief.

66.     Named Plaintiffs claims are typical of the claims of the members of the Class. Named Plaintiffs and all members of the Class are persons who should have been paid for all of their work or on-call time, as well as for any time worked under duties of higher graded positions of lieutenant, captain or chief.

67.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel who are competent and experienced in class litigation.  Plaintiffs have interests that are not antagonistic to, or in conflict with, those interests Plaintiffs seek to represent as the Class representatives.

68.     Defendants refuse to act on grounds usually applicable to the Class, thereby making it appropriate for final injunctive and declaratory relief to be granted with respect to the Class as a whole. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.

69.     Because the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to pursue individual litigation in order to vindicate their rights.  In the absence of a class action, Defendants will retain the benefits of their wrong doing despite serious violations of the law.  Plaintiffs envision no difficulties likely to be encountered in the management of this litigation as a class action.

70.     Each of Plaintiffs is a proper representative of the class of those similarly situated as they enjoyed various levels of seniority with Defendants, are experienced firefighters and were all damaged in the same ways for which class relief is being sought.

71.     The class satisfies the requirements of Rule 23 in that the class is sufficiently (1) numerous, in that there are in excess of 4,000 such former and current firefighters who worked for Defendants, (2) common in fact and law, in that the interests of Plaintiffs is identical to that of the rest of the class in that all suffered the same damage calculable by easy mathematical calculation of hours and wages, contractual formulae for up pay and overtime, (3) typical of all claims in that each of the Plaintiffs has the same type of claim as other plaintiffs concerning loss of wages, and (4) there is adequacy of representation in that they will adequately represent the interests of the class and they have secured class counsel with experience in class litigation,

employment class action, and complex employment litigation as well as complex overseas contractors workers wage and disability cases.

## COUNT I
### (Declaratory Judgment)

72.      Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 71.

73.      Plaintiff seeks a declaration that the Defendants improperly required Plaintiffs and those similarly situated to submit to class arbitration, Plaintiffs and those similarly situated were required to waive valuable and substantive rights under false pretenses by submitting to class arbitration, which was unconscionable because the contracts did not require class arbitration, improperly set forth a right of Defendant WSI to require arbitration in that the Federal Arbitration Act was related in the contract to no provision requiring any arbitration, permitting them to proceed on claims from 2005 to the present based on the original filing date of the Class Arbitration referred to above.

74.      Plaintiffs seek a declaration that the contracts between WSI and Plaintiffs was ambiguous and unconscionable if applied to require arbitration of class action as they mention nothing about class actions, ambiguous and unconscionable for lack of any rules of arbitration or allocation of costs, and also contain confusing and misleading provisions pertaining to any duty to arbitrate individual claims, and seeks a further declaration that the Defendants KBR controlled the conditions, hours, and on call time of Plaintiffs and those similarly situated as if Plaintiffs were employees of Defendant KBR.

**COUNT II**
(Breach of Contract, Express and Implied, unjust enrichment)

75.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 74 above.

76.     Defendants entered into express agreements to employ Plaintiffs and those similarly situated in Iraq or Afghanistan, and in other foreign countries, in exchange for pay. Defendants were in a superior bargaining position and Plaintiffs relied on Defendants to properly and lawfully pay them up-pay, overtime, and regular pay, and keep records of hours worked, hours on-call during 24/7 firefighting coverage of bases.  Defendants breached the covenant of good faith and fair dealing implicit in every contract with Plaintiffs and those similarly situated by failing to do so, and by threatening to fire Plaintiffs for any complaints concerning failure to keep records or to pay Plaintiffs and those similarly situated.

77.     Defendants made implied agreements to pay for each item of unpaid work, or for pay at rates that were beneath the rates for such work based on the time, the rank of the individual or type of work such as supervision.

78.     Defendants benefited through not paying Plaintiffs and those similarly situated and would be unjustly enriched if they did not have to pay for the work that enabled them to bill the United States government and to maintain the LOGCAP contracts by providing 24/7 firefighting services and capability on bases throughout Iraq and Afghanistan.

79.     As a direct and foreseeable result of Defendants' breach, Plaintiffs and those similarly situated have been subjected to damages in loss of pay, interest, penalties, and other damages under the contracts, and other foreseeable consequential damages.

24

## COUNT III
(Overtime, On Call Time and Wait Time under Florida Law)

80.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 79 above.

81.     The contracts with Plaintiffs and those similarly situated calls for application of Florida law.  Under Florida Law, a worker is entitled to time and a half for overtime, and payment for on-call time and wait time such as Plaintiffs and those similarly situated were required to work, but for which they were not paid.

82.     Plaintiffs and those similarly situated were required by KBR/Halliburton and Wackenhut to be on call on the premises in such a way that they could not use the time for their own purposes, i.e., sleeping, and often were awakened for hours for emergencies for which they were only paid 15 minutes when they lost many hours of sleep and were hearing squawks on the beepers and walkie talkies they were required to keep by their head, thus being unable to sleep much of the time.

83.     Defendants failed to pay for overtime and on-call time for the last five years and are liable for time and a half for overtime or on-call time that put employees over 40 hours per week, and for straight time for other hours.

84.     Defendants knew they were violating the Florida law and are therefore liable for liquidated damages, interest, and attorneys fees.

84.     Florida's laws follow the Fair Labor Standards Act of the United States. Defendants are liable to Plaintiffs and those similarly situated for overtime and on call time, liquidated damages, penalties, interest, and attorneys fees under that Act.

25

85.     By reason of the foregoing, Defendants are liable to Plaintiffs for damages, both compensatory, liquidated, time and a half, as well as attorneys fees.

### COUNT IV
(Intentional and Negligent Misrepresentation:  Fraud in the Inducement to Contract)

86.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 85 above.

87.     When recruiting each Plaintiff and those similarly situated to agree to accept employment and to travel to KBR's training and orientation center, Defendants had superior knowledge and bargaining power.

88.     When so recruiting, Defendants intentionally and negligently told each Plaintiff and those similarly situated that the contracts to be offered at the KBR center would provide that Plaintiffs would be compensated fully for their services and that their class action rights would be protected by the contracts.

89.     Defendants had superior bargaining power and presented the Plaintiffs and those similarly situated with the contracts on a take-it-or-leave-it basis.  When negotiating contracts with Plaintiffs, Defendants possessed superior knowledge of the contents of Defendants contract with the United States (or of WSI's contracts with KBR).  When negotiating contracts with Plaintiffs, Defendants possessed superior knowledge of the actual working conditions and assignments and compensation practices of WSI that Plaintiffs would be working under.

90.   When presenting the contracts to each Plaintiff at the KBR center, Defendants intentionally and negligently told each Plaintiff that each contract would provide for full

compensation for services rendered and that their class action rights would be protected by the contracts and that the contracts would be honored.

91.     In contracting with Defendants, each Plaintiff relied upon these representations.

92.     The foregoing representations made by the Defendants were false and fraudulent and were made by Defendants as part of a scheme or artifice to defraud.

93.     The representations were known by the Defendants to be false when made and were made with intent to deceive Plaintiffs and with intent that Plaintiffs rely upon them and to induce Plaintiffs to travel to KBR's center and then to enter into the employment contracts.

94.     The representations were material and, at the time they were made, Plaintiffs believed them and did not know the truth and in reliance thereon Plaintiffs were induced to enter into the employment contracts and to travel to Iraq and Afghanistan to their detriment.

95.     The course of conduct of the Defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of Plaintiffs' rights and was attended by malice and vindictiveness on the part of said Defendants.

96.     By reason of the foregoing, Defendants are liable to Plaintiffs for damages, both compensatory and punitive, and plaintiffs demand judgment against defendants on this Count for compensatory damages and the sum of $100,000,000 in punitive damages.

## COUNT V
### (Intentional and Negligent Misrepresentation After Contract)

97.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 96 above.

98.     Once the Plaintiffs were working in Iraq and Afghanistan, Defendants intentionally or negligently mislead the Plaintiffs and those similarly situated concerning Defendants' obligation to pay up-pay, on-call time, and overtime pay.

99.     Once the Plaintiffs were working in Iraq and Afghanistan, Defendants intentionally or negligently mislead the Plaintiffs and those similarly situated that Defendants were keeping track of hours worked, on-call time spent, and the level of responsibility and difficulty of the work performed.

100.    Plaintiffs reasonably relied on the Defendants to properly determine hours worked or on-call time, and to pay them appropriately under Florida law and the contract.

101.    Plaintiffs were damaged as a result of said reliance, including loss of money and interest.

102.    Defendants knew that the classification of the work done by Plaintiffs and those similarly situated, that the records and payment of hours worked was incorrect, that the amount of on-call time was grossly incorrect.  Defendants' conduct was wanton, willful, and reckless, justifying an award of punitive damages, and treble damages for losses incurred and proved by Plaintiffs and those similarly situated through submission of mathematical formulae for such damages.

## COUNT VI
(Breach of Contract, Express and Implied, covenant of good faith and fair dealing)

103.    Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 102 above.

104.     Defendants entered into express agreements to employ Plaintiffs and those similarly situated in Iraq or Afghanistan, and in other foreign countries, in exchange for pay, up-pay, hazard pay, overtime pay, and on-call pay.  Defendants were in a superior bargaining position and Plaintiffs relied on Defendants to properly and lawfully pay them for hours worked or on-call time, and to properly keep records, among other administrative functions. Defendants breached their implied and express contracts with Plaintiffs and former and current employees of Defendants, by failing to pay them for hours worked, on-call time, overtime and other pay for work performed in particular classification and status, failed to properly keep records, and then to seek to limit what they could recover in a the class arbitration.  Defendants breached the covenant of good faith and fair dealing implicit in every contract with Plaintiffs and those similarly situated.

105.     As a direct and foreseeable result of Defendants' breach, Plaintiffs and those similarly situated have been subjected to damages of payment of wages, overtime, on-call time, off-the-clock time, and specialized pay due to status or classification, and other foreseeable consequential damages, including treble damages if any called for under the Florida or other wage acts applicable to Defendants actions.

**COUNT VII**
(Fraudulent and Deceptive Trade Practices under FDUTPA)

106.     Plaintiff repeats and incorporates by reference each and every allegation set out in paragraphs 1 through 105.

107.     Defendants' actions aforementioned regarding how they refused to pay Plaintiffs and those similarly situated, bringing Plaintiffs and those similarly situated to KBR's facility

after offer of employment and making them sign an unconscionable agreement that is vague as to

class arbitration, and then improperly seeking class arbitration and seeking to settle the class

arbitration and force unconscionable terms on Plaintiffs and those similarly situated, some of

whom had no notice of such, including forcing a class arbitration and deceptively seeking to

prevent opting out, or give sufficient time for notifying the entire class and awaiting

notifications, and deceptively making the notification process difficult, in concert with each

other, through KBR and its supervisors, constituted deceptive acts and trade practices within the

meaning of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Fla.Stat. §

501.201 *et seq.*).

108.   Defendants actions were fundamentally unfair and deceptive toward Plaintiffs and

those who are similarly situated.

109.   Defendants are engaged in interstate and foreign commerce, and as such engaged

in deceptive trade and consumer practices, that damaged the Plaintiffs and those similarly

situated.

110.   As a direct result of the actions of Defendants, Plaintiffs and those similarly

situated firefighters working for WSI and KBR suffered actual damages, costs, and attorneys

fees, together with treble damages.

111.   The actions of Defendants were willful, and therefore for each deceptive and

unfair act are liable for a $10,000 penalty per act.

**COUNT VIII**
(Civil Conspiracy, Prima Facie Tort)

30

112.     Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 111 as if fully set out herein.

113.     Defendants conspired with each other and, on information and belief, with third parties, to commit the acts aforesaid against the Plaintiffs and those similarly situated.  Their acts amount to a civil conspiracy to defraud the public, the United States government, and harm Plaintiffs, including but not limited to claiming hours worked by firefighters on contract under LOGCAP and subcontracts, as well as other contracts, and being paid for said work and 24/7 firefighter on call availability, but not paying Plaintiffs and those similarly situated for such work, overtime, up pay, pay grade, or on call status.  It is also a conspiracy to commit fraud.  It is also a conspiracy to breach contracts with employees.

114.     Defendants intentionally inflicted harm on Plaintiffs and their families, and when Plaintiffs or other similarly situated complained of the breaches, they were threatened and intimidated into silence.  Defendants created a culture of intimidation and threat to carry out their conspiracy.  This conduct by Defendants was without justification, which would otherwise be lawful, and constitutes a prima facie tort, and conspiracy to commit a tort.

115.     The conspiracy to commit these torts, breaches of duty, and prima facie tort actually caused the damages set forth herein.

116.     In all the actions described in this complaint, defendants acted through their agents, officers, attorneys, representatives, insurance carriers through their officers, agents, attorneys and insurance adjustors and managers, which were acting in the course and scope of

employment or agency or representation for defendant contracting companies, and which defendant companies ratified all of the acts described in this complaint.

117.    Plaintiffs have been damaged in their persons, property, and out of pocket expenses, and attorneys fees.

118.     The conduct of Defendants was wanton, willful, malicious, oppressive, intentional, fraudulent, and beyond the bounds of acceptable behavior in a civilized society, justifying an award of punitive damages to punish this conduct and deter others from doing the same in the future.

**COUNT IX**
(Promissory Estoppel/Detrimental Reliance)

119.    Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 118.

120.    The Defendants promised Plaintiffs that Defendants would compensate Plaintiffs with the pay and benefit terms required under KBR's LOGCAP contracts with the United States.

121.    When negotiating contracts with Plaintiffs, Defendants possessed superior knowledge of the contents of Defendants contract with the United States (or of WSI's contracts with KBR).

122.    When negotiating contracts with Plaintiffs, Defendants possessed superior knowledge of the actual working conditions and assignments and compensation practices of WSI that Plaintiffs would be working under.

123.    The Defendants promised Plaintiffs that Defendants would assign Plaintiffs work within the terms of Plaintiffs' contacts with Defendants.

124.   In reliance upon these promises, Plaintiffs signed contracts with Defendant WSI and performed work as assigned.  WSI required Plaintiffs to submit to the orders of Defendants KBR on site in Iraq and Afghanistan which resulted in Plaintiffs performing work for which they were not compensated.

125.   Plaintiffs have made a claim upon the Defendants to pay them for the work assigned, but Defendants have wrongfully denied his claim.  Injustice will result the Defendants do not pay Plaintiffs.  As a result, Plaintiffs have suffered damages in the amount to be proved at trial.

## COUNT X
(Unjust Enrichment)

126.    Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 125.

127.    Plaintiffs provided valuable services to Defendants beyond what they were compensated for.  The valuable services to Defendants conferred a benefit upon Defendants in an amount to be proved at trial.

128.    Defendants were aware of, and had knowledge of, the benefits conferred upon Defendants by Plaintiffs and accepted such benefits, namely work, overtime, off-the-clock time, on-call time, work as supervisors and lieutenants and captains at non-officer pay, and other work for which Defendants did not compensate Plaintiffs.

129.    Defendants' acceptance and retention of the services make it inequitable for Defendants to retain these benefits without payment of their value.

130.     The unpaid for services had a value in an amount to be proved at trial, which Defendants unjustly kept the benefit of and never provided any payment for said services. Allowing Defendants to keep the benefits of such services would unjustly enrich Defendants.

131.     By reason of the foregoing, Defendants are liable to Plaintiffs for damages in an amount to be proved at trial.

### COUNT XI
(Quantum Meruit)

132.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 131.

133.     Plaintiffs rendered valuable services to Defendants with the intention of receiving from Defendants a fee for all services rendered, not just for some services.  Defendants accepted these services, received the benefit of such services, and knew that Plaintiffs expected to be paid for such services.

134.     All services rendered by Plaintiffs to Defendants were rendered under such circumstances that Defendants knew Plaintiffs expected to be paid.  On many occasions when Plaintiffs spoke with representatives of Defendants, the Defendant representatives assured Plaintiffs that they would be paid for the additional services provided.

135.     Plaintiffs stated that they expected to be paid for the value of these services.  By reason of the foregoing, Defendants are liable to Plaintiffs for damages in an amount to be proved at trial.

### COUNT XII
(Preliminary and Permanent Injunctive Relief)

136.     Plaintiff repeats and incorporates by reference each and every allegation set out in paragraphs 1 through 135 above.

137.     This Court has the authority to issue a declaratory judgment finding that the Defendants' conduct is in violation of the law and contracts, and to enjoin such practices, to require Defendants to make payments and to adequately disclose hours that should be compensated, to former and existing employees, and to allow Plaintiffs to recover benefits due to them.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray for judgment for Plaintiffs and for the following relief:

(a)     Judgment against Defendants for the Amount of hours, on call hours, up pay, overtime, and such withholding for federal local and state income tax if any, lost unemployment benefits, and other amounts due from Defendants on account of failure to pay Plaintiffs and those similarly situated;

(b)     Judgment against Defendants for foreseeable breach of contract, implied contract and covenant of good faith and fair dealing;

(c)     Judgment against Defendants for intentional and negligent misrepresentation and punitive damages;

(d)     Judgment against Defendants for willful violations under Florida law of failure to pay overtime and on-call or wait time of Plaintiffs and those similarly situated, for damages, liquidated damages, penalties, interest, and attorneys fees;

(e)     Judgment against Defendants finding that their deceptive and unfair trade practices violate FDUPTA, for damages, attorneys fees, and civil penalties up to $10,000 per act for said violations;

(f)     Judgment against Defendants for civil conspiracy and prima facie tort for damages, compensatory damages, and punitive damages;

(g)     Judgment against Defendants for reliance damages and reasonable value of services for which they were unjustly enriched;

(h)     Reasonable attorneys' fees, and treble damages, and costs of the action in excess of $100,000,000.00;

(i)     Punitive damages in the amount of $100,000,000.00.

(j)     Injunctive relief prohibiting Defendants from engaging in this conduct in the future, and requiring Defendants to fully account for the money charged to the United States government, as well as that owing to Plaintiffs;

(k)     For prejudgment interest on all amounts of damages.

### JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable as a matter of law.

Dated: December 2d, 2011                     Respectfully submitted,

                                             Scott J. Bloch, Esq.
                                             DC Bar No.  984264
                                             LAW OFFICES OF SCOTT J. BLOCH, PA
                                             1050 17th St., N.W., Suite 600
                                             Washington, DC  20036
                                             Tel.  (202) 496-1290
                                             Fax (202) 478-0479
                                             sbloch@bcounsel.com
                                             www.dcresultslawyers.com


                                             Michael J. Trevelline, DC Bar # 437454
                                             LAW OFFICES OF MICHAEL TREVELLINE
                                             1823 Jefferson Place, NW
                                             Washington, DC 20036-2504
                                             (202) 737-1139
                                             Fax:  (202) 775-1118
                                             mjt@mjtlegal.com


                                             Counsel for Plaintiffs

36