**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**ADAM HILL,** *et al.*,

    **Plaintiffs,**

    **v.**

**WACKENHUT SERVICES**
**INTERNATIONAL,** *et al.*,

    **Defendants.**

Civil Action No.  11-2158 (JEB)

---

<u>**MEMORANDUM OPINION**</u>

    Plaintiffs were employed by Defendant Wackenhut Services LLC as firefighters in Iraq and Afghanistan.  They brought this action against Wackenhut and its affiliates, as well as against other companies, alleging that they were unlawfully denied various forms of employment benefits and compensation, such as in-country and overtime pay.  The Wackenhut Defendants have now filed a Motion to Compel Arbitration and Stay Litigation, arguing that the claims set forth in Plaintiffs' Complaint are subject to a mandatory-arbitration provision in their employment agreements.  Seeking to avoid arbitration, Plaintiffs challenge the validity of the provision and argue that the Court – not an arbitrator – must determine whether a valid, enforceable arbitration agreement exists before ordering Plaintiffs to submit their claims to an arbitrator.  The Court agrees that it is the appropriate authority to resolve Plaintiffs' challenges to the disputed arbitration clause; upon review of these challenges, however, the Court finds that the arbitration agreement is valid and covers the allegations in the Complaint.  Defendants' Motion will thus be granted.

1

## I.       Background

On December 6, 2011, Plaintiffs filed suit against a single entity they call "Wackenhut Services International, aka Wackenhut Services Inc., aka Wackenhut Services LLC."  See Compl. at 3-4.  Wackenhut explains that its named businesses are separate entities, see Motion to Compel at 1 & n.1, and the Court will thus refer to them as "the Wackenhut Defendants." Plaintiffs also sued two other government-contracting companies that Plaintiffs claim "oversaw and controlled" Wackenhut – Halliburton Corp. and Kellogg-Brown & Root, LLC (in several corporate forms)  – alleging all Defendants deprived them of "in-country pay, danger pay, on-call pay, up-lift pay, overtime, and other benefits and compensation" in relation to their work as firefighters in Iraq and Afghanistan.  Compl., ¶¶ 2, 4.  Plaintiffs claim that they received promises of such compensation to "induce them to leave their families in the United States and work under harsh conditions in Iraq and Afghanistan" from 2005 to the present.  Id., ¶¶ 4, 62. They assert twelve separate causes of action related to these allegations.  Id., ¶¶ 72-137.

The terms of Plaintiffs' employment were set forth in employment contracts that were signed annually by each Plaintiff.  Id., ¶ 53.  Although Plaintiffs reference these employment contracts throughout their Complaint, see id., ¶¶ 5, 53, 60, 61, 73, 74, 76, 88-91, 104, they never cite to specific language from these agreements, nor do they attach a copy of any of the contracts.  In moving to compel arbitration,  the Wackenhut Defendants attach a standard-form employment agreement embodying the terms and conditions of employment that they claim would be found in each of Plaintiffs' individual employment contracts, including a clause requiring employees to arbitrate disputes with their employer.  See Mot., Declaration of Luke Shelton, ¶ 3 & Exh. 1 (Form Employment Agreement), ¶ 27.

Plaintiffs in their Opposition disavow any knowledge of this agreement.  See Opp. at 2; see also id. at 9, 11-12 ("we have no proof that the particular exemplar agreement . . .  was ever given to these plaintiffs or was signed by them"; "there is nothing showing one of these plaintiffs signed or initialed it or one materially like it, or that it contained an arbitration clause"). Plaintiffs provide no support for this general denial, nor do they provide any evidence that the contracts they signed or the applicable arbitration clause was different from the standard-form agreement provided by Defendants.

Defendants' Reply endeavors to "lay[] to rest any question over the existence of written arbitration agreements between Plaintiffs and Wackenhut Services, LLC" by attaching signed employment agreements for "three of the Plaintiffs, which span the time of Plaintiffs' proposed class period."  Reply at 3 n.2.  In the signed agreements, Plaintiffs separately initialed the "Specific Terms and Conditions" – including the arbitration provision – and signed the agreement, acknowledging that they had "read this Employment Agreement and fully understand, agree, and consent to the terms and conditions of this Agreement."  Reply, Declaration of Clyde S. Brinkley, Exhs. 1-3 (employment agreements of Plaintiffs Hill, Harville, and Garber).

In paragraph 27 of the signed agreements, under the heading "**Claims/Disputes**," the contracts state:

> In consideration of your employment, you agree that your assignment, job or compensation can be terminated with or without cause, with or without notice at any time at your option or at Employer's option.  You also agree that you will be bound by and accept as a condition of your employment the terms of the Wackenhut Dispute Resolution Program which are herein incorporated by reference.  You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal

3

> injury claim arising in the workplace, you have against other
> parent or affiliate of Employer, <u>must be submitted to binding</u>
> <u>arbitration instead of to the court system.</u>

<u>See, e.g.</u>, Garber Agreement, ¶ 27 (emphasis added).  Additionally, the contracts state that they

"shall be governed by and construed in accordance with the laws of the State of Florida" and "in

accordance with the Federal Arbitration Act."  <u>Id.</u>, ¶ 26.

Pursuant to the arbitration provision in Plaintiffs' employment contracts, the Wackenhut

Defendants now move to compel arbitration and stay this litigation.

## II.    Legal Standard

When considering a motion to compel arbitration, "the appropriate standard of review for

the district court is the same standard used in resolving summary judgment motions" pursuant to

Federal Rule of Civil Procedure 56(c).  <u>See</u> <u>Aliron Intern., Inc. v. Cherokee Nation Indus., Inc.</u>,

531 F.3d 863, 865 (D.C. Cir. 2008); <u>Hughes v. CACI, Inc.</u>, 384 F. Supp. 2d 89, 92–93 (D.D.C.

2005); <u>Brown v. Dorsey & Whitney, LLP</u>, 267 F. Supp. 2d 61, 67 (D.D.C. 2003).

As the party seeking to compel arbitration, Defendants must first come forward with

"evidence sufficient to demonstrate an enforceable agreement to arbitrate."  <u>See</u> <u>Smart Text</u>

<u>Corp. v. Interland, Inc.</u>, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003).  The burden then shifts to

Plaintiffs "to raise a genuine issue of material fact as to the making of the agreement, using

evidence comparable to that identified in Fed. R. Civ. P. 56."  <u>See</u> <u>Grosvenor v. Qwest</u>

<u>Communications International, Inc.</u>, 2010 WL 3906253, at *5 (D. Colo. 2010).  Arbitration shall

be compelled if there is "'no genuine issue of fact concerning the formation of the agreement' to

arbitrate."  <u>Kirleis v. Dicki, McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 159 (3d Cir. 2009)

(quoting <u>Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.</u>, 636 F.2d 51, 54 (3d Cir. 1980)).

A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.  Liberty

Lobby, Inc., 477 U.S. at 249-50.

## III.    Analysis

By enacting the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., Congress "manifest[ed] a

'liberal federal policy favoring arbitration agreements.'"  Gilmer v. Interstate/Johnson Lane

Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Construction

Corp., 460 U.S. 1, 24 (1983)).  The FAA provides that "[a] written provision in any . . . contract

evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The FAA thus creates a strong presumption in favor of enforcing arbitration agreements,

and "any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration."  Moses H. Cone, 460 U.S. at 24-25; see also Shearson/Am. Express, Inc. v.

McMahon, 482 U.S. 220, 226–27 (1987) (stating that arbitration agreements must be rigorously

enforced).  Nevertheless, parties cannot be forced into arbitration unless they have agreed to do

so.  AT&T Techs. Inc. v. Commc'ns Workers, 475 U.S. 643, 648–49 (1986).

Questions of arbitrability are typically brought before courts pursuant to Section 4 of the

FAA, which permits a party to petition any United States district court that would otherwise have

subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner

provided for in such agreement."  9 U.S.C. § 4.  When presented with a motion to compel

arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and

decide whether arbitration should be compelled."  Nelson v. Insignia/Esg, Inc., 215 F. Supp. 2d

143, 146 (D.D.C. 2002).

In this case, in response to Defendants' Motion to Compel Arbitration, Plaintiffs have challenged both the existence and the legitimacy of the arbitration provision in their employment contracts. The Court must, consequently, first determine if an arbitration provision actually exists. Finding that it does, the Court next assesses whether a court or an arbitrator should evaluate the enforceability of the provision. Deciding that such a determination belongs to the Court, it will then analyze each of Plaintiffs' arguments as to why their claims should not be arbitrated. First, the Court will look at the three contract defenses raised by Plaintiffs: unconscionability, defective formation due to no meeting of the minds, and duress. Next, the Court will address whether the claims in Plaintiffs' Complaint fall within the scope of the arbitration agreement. Ultimately holding that none of Plaintiffs' arguments defeats arbitrability, the Court will grant the Wackenhut Defendants' Motion and stay the case pending arbitration.

A. <u>Agreement to Arbitrate</u>

As the party seeking to compel arbitration, Defendants must come forward with "evidence sufficient to demonstrate an enforceable arbitration agreement. <u>Sapiro v. VeriSign</u>, 310 F. Supp. 2d 208, 212 (D.D.C. 2004) ("'the party asserting the existence of a contract to submit disputes to arbitration has the burden of proving its existence'") (citing <u>Bailey v. Federal Nat. Mortg. Ass'n</u>, 209 F.3d 740, 746 (D.C. Cir. 2010)). Here, Plaintiffs challenge the very existence of a contract containing an arbitration provision. <u>See</u> Opp. at 9-11. They argue that Defendants must show that Plaintiffs "signed a particular agreement to arbitrate a dispute," <u>id.</u> at 12, and that "[a]ll that Defendant shows is a blank contract, which Mr. Shelton, the affiant says is the 'standard form' used for all firefighters for WSI, and that the arbitration provisions for everyone's contracts were 'materially the same' as that contained in the exemplar presented." <u>Id.</u> at 11. They thus maintain that "there is nothing showing one of these plaintiffs signed or

initialed it or one materially like it, or that it contained an arbitration clause." <u>Id.</u> at 11-12.

While Defendants' first submission may well have sufficed to defeat this argument, their second

easily does.  In their Reply they provide the Court with three exhibits of "signed employment

agreements from three of the Plaintiffs, which span the time of Plaintiffs' proposed class period:

one from Adam Hill (1/05), one from Todd Harville (12/07), and one from John Garber (02/09),"

all of which include the same provision requiring arbitration, initialed by each employee. <u>Id.</u> at 3

n.2.

     Having stated at various points in their Complaint that they signed employment contracts,

<u>see</u> Compl., ¶¶ 5, 53, 61, 62, Plaintiffs have provided no evidence that the contracts they refer to

are not the ones attached to Defendants' Motion.  More specifically, they have offered nothing to

show that the arbitration provision in those contracts was not the one they agreed to.  Plaintiffs'

mere assertion that they have not agreed to arbitrate disputes with their employer – with no

evidence supporting the disavowal – is insufficient to create an issue of fact in light of

declarations submitted by Defendants, the form employment contract, and the three contracts

signed and initialed by Plaintiffs spanning the proposed class period.  The Court thus finds that

Defendants have provided sufficient unrebutted evidence showing that Plaintiffs signed

employment agreements with their employer that included mandatory arbitration provisions.

     B.  <u>Contract-Law Defenses</u>

     Plaintiffs next argue that even if they signed an agreement containing that arbitration

provision, the provision is invalid, and they cannot be compelled to arbitrate their claims.  <u>See</u>

Opp. at 14-23.  Defendants do not address the specific contract-law defenses raised by Plaintiffs,

instead arguing that the arbitrator – and not the Court – is the appropriate authority to evaluate

them.  See Reply at 3-5.  The Court will address this threshold issue and then discuss each challenge in turn.

### 1. Court or Arbitrator?

In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006), the Supreme Court established a framework for analyzing who – courts or arbitrators – should decide issues of arbitrability.  The framework looks to the nature of the party's challenge to the validity of the arbitration agreement and divides these challenges into: 1) challenges to the validity of the agreement to arbitrate and 2) challenges to the contract as a whole.  Id. at 444.  Buckeye held that the former should be adjudicated by the court, while the latter must be resolved by the arbitrator. Id.  Thus, where a plaintiff's argument is that the contract as a whole is unenforceable, the arbitrator decides the validity of the contract (including the arbitration provision); in contrast, when a plaintiff argues that an arbitration clause, standing alone, is unenforceable, that is a question to be decided by the court.  See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1000 (9th Cir. 2010); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1120 (9th Cir. 2008); Roberts v. Synergistic Int'l, LLC, 676 F. Supp. 2d 934, 947 (E.D. Cal. 2009) (where plaintiff's challenge was to arbitration clause rather than contract as a whole, court to determine issue of arbitrability); ATP Flight School, LLC v. Sax, 44 So. 3d 248, 252 (Fla. Dist. Ct. App. 2010) (applying Buckeye and finding that as challenge was not to arbitration provision, but to underlying agreement, claim must proceed to arbitration); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403 (1967) (guided by Section Four of the FAA, Supreme Court held that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

This bifurcated approach rests on substantive federal arbitration law, which treats arbitration provisions as severable from the remainder of the contract.  Buckeye, 546 U.S. at 445-46; see also Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010) (explaining that "because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' without mention of the validity of the contract in which it is contained," a court is not prevented from enforcing specific agreement to arbitrate, even if party challenges enforceability of contract as a whole).

There is no binding precedent to assist the Court where the challenge in question may not fit squarely into either category for purposes of the Buckeye framework.  The Ninth Circuit, however, has recently provided helpful guidance on the matter in Bridge Fund Capital Corp., 622 F.3d 996.  That Circuit there stated that "[w]hat matters is the substantive basis of the challenge" – "as long as the plaintiff's challenge to the validity of an arbitration clause is a distinct question from the validity of the contract as a whole, the question of arbitrability is for the court to decide regardless of whether the specific challenge to the arbitration clause is raised as a distinct claim in the complaint."  Id. at 998.  Looking not only at the complaint, but also at the plaintiffs' opposition to the motion to compel, the court pointed to plaintiffs' arguments that the arbitration agreement: "(1) was not mutually entered into; (2) improperly limits Plaintiffs' damages; (3) impermissibly shortens the statute of limitations; (4) contains invalid place and manner restrictions; (5) seeks to negate Plaintiffs' unwaivable rights under the CFIL; and (6) wrongly bans class and consolidated actions."  Id. at 1002.  In light of these challenges, the Ninth Circuit determined that the plaintiffs' arguments were "marshaled against the validity of the arbitration clause alone" and were separate from the plaintiffs' challenges to the contract as a whole, such that the question of arbitrability was properly decided by the court.  Id.; see also Nagrampa v.

MailCoups, Inc., 469 F.3d 1257, 1270 (9th Cir. 2006) (examining "crux of the complaint" to determine if plaintiff was challenging the arbitration clause); Felts v. CLK Mgmt., Inc., 254 P.3d 124, 135-36 (N.M. Ct. App. 2011) (where plaintiff's arguments challenging arbitration clause were distinct from his claims against underlying agreement, court was proper body to evaluate plaintiff's unconscionability argument); Winter v. Window Fashions Prof'ls., Inc., 83 Cal. Rptr. 3d 89, 93-94 (Cal. Ct. App. 2008) (holding trial court properly determined issue of arbitrability where party opposing arbitration challenged arbitration provision itself as unconscionable).

Plaintiffs here raise a number of similar challenges to the arbitration agreement in their Opposition to Defendants' Motion.  Specifically, Plaintiffs argue that (1) "the arbitration provision is unconscionable, procedurally and substantively," Opp. at 14; (2) there was no meeting of the minds as to the agreement to arbitrate, id. at 31; and (3) no arbitration agreement was formed due to duress.  Id. at 32.  Additionally, Plaintiffs challenge the arbitration agreement in Count I of the Complaint: "Plaintiffs and those similarly situated were required to waive valuable and substantive rights under false pretenses by submitting to class arbitration, which was unconscionable because the contracts did not require class arbitration."  Compl., ¶ 73. Furthermore, Plaintiffs argue the contracts were

> ambiguous and unconscionable if applied to require arbitration of class action as they mention nothing about class actions, ambiguous and unconscionable for lack of any rules of arbitration or allocation of costs, and also contain confusing and misleading provisions pertaining to any duty to arbitrate individual claims.

Id., ¶ 74. While Plaintiffs undoubtedly attack many aspects of the employment agreement as a whole, they also make a distinct challenge to the arbitration agreement in their Complaint and in their Opposition.  The Court – and not an arbitrator – should, therefore, determine the threshold issue of arbitrability.

### 2. *Plaintiffs' Challenges to Arbitration Clause*

Under the FAA, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contracts." 9 U.S.C. § 2.  In analyzing whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."  Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).  These contract-based challenges are governed by applicable state law.  Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 180-81 (3d Cir. 2010); Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007).  Plaintiffs assert here that Florida law should govern the Court's analysis of the contract defenses, pointing to language in the exemplar employment agreements.  See Opp. at 6-9.  Defendants do not contest this assertion or suggest that any other state law should govern.  Reply at 5.  Because the parties appear to agree that Florida law is the governing law – and the contracts clearly so indicate – the Court will proceed accordingly.

In their Opposition, Plaintiffs raise three contract-law challenges to the arbitration provision: unconscionability, defective formation due to no meeting of the minds, and duress. Although Plaintiffs bear the ultimate burden of invalidating the provision, here they need only raise a genuine issue of material fact.  See Kirleis, 560 F.3d at 159; Bridge Fund, 622 F.3d at 1004; SA-PG Sun City Center, LLC v. Kennedy, 79 So. 3d 916, 919 (Fla. Dist. Ct. App. 2012).

In evaluating the three contract defenses raised by Plaintiffs, the Court must determine whether any is applicable to invalidate the arbitration provision at issue.  In other words, each of these challenges must be "directed specifically to the agreement to arbitrate," rather than to the contract as a whole.  Rent-A-Center, 130 S. Ct. at 2778.  The Court, therefore, will not address Plaintiffs' arguments to the extent that they challenge the contract in its entirety, rather than the

severable arbitration clause.  Such broader challenges lie in the arbitrator's bailiwick.  Bearing

this caveat in mind, the Court now turns to each of the three challenges.

a.  Unconscionability

Plaintiffs first contend that the arbitration provision is unconscionable.  Under Florida

law, a court may decline to enforce a contract on that ground.  See Powertel, Inc. v. Bexley, 743

So. 2d 570, 574 (Fla. Dist. Ct. App. 1999) (citing Steinhardt v. Rudolph, 422 So. 2d 884, 889

(Fla. Dist. Ct. App. 1982)).  In order to find a contract unconscionable, "[t]he party seeking to

avoid the arbitration provision has the burden to establish unconscionability."  Murphy v.

Courtesy Ford, LLC, 944 So. 2d 1131, 1134 (Fla. Dist. Ct. App. 2006) (citation omitted);

Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 288 (Fla. Dist. Ct. App. 2003).

A court applying Florida law must determine that the contract is both procedurally and

substantively unconscionable, see Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1134 (11th

Cir. 2010); Belcher v. Kier, 558 So. 2d 1039, 1040 (Fla. Dist. Ct. App. 1990); Complete

Interiors, Inc. v. Behan, 558 So. 2d 48, 52 (Fla. Dist. Ct. App. 1990), and Plaintiffs here argue

that they satisfy both prongs.  See Opp. at 14.  Defendants do not address the substance of

Plaintiffs' unconscionability argument, instead re-stating that the arbitrator – and not this Court –

should address those issues.  See Reply at 4-5.  As Plaintiffs bear the burden of showing the

invalidity of the arbitration clause, Sims v. Clarendon Nat. Ins. Co., 336 F. Supp. 2d 1311,

1321 (S.D. Fla. 2004) – and here that at least a material dispute of fact exists – the Court will

weigh their arguments even without briefing from Defendants.

"The procedural component of unconscionability relates to the manner in which the

contract was entered and it involves consideration of such issues as the relative bargaining power

of the parties and their ability to know and understand the disputed contract terms."  Powertel,

743 So. 2d at 574.  Courts must consider the following four factors to determine whether a

contract is procedurally unconscionable under Florida law:

> (1) the manner in which the contract was entered into; (2) the
> relative bargaining power of the parties and whether the
> complaining party had a meaningful choice at the time the contract
> was entered into; (3) whether the terms were merely presented on a
> "take-it-or-leave-it" basis; and (4) the complaining party's ability
> and opportunity to understand the disputed terms of the contract.

Pendergast, 592 F.3d at 1135 (citations omitted).  While unequal bargaining power between

employers and employees may be common, "[m]ere inequality in bargaining power . . . is not a

sufficient reason to hold that arbitration agreements are never enforceable in the employment

context."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991).

Plaintiffs argue that the arbitration agreement is procedurally unconscionable because:

> (1) Plaintiffs were given the agreement on a take it or leave it basis
> after they had already been hired by Defendant WSI, and so it was
> an adhesion contract; (2) WSI provided the lengthy agreement
> without highlighting the arbitration provision alleged to be
> binding, and did not provide copies of the WSI arbitration policy
> or JAMS arbitration rules; (3) the arbitration clause, paragraph 27
> in a 14 page agreement, was not bold, underlined, or otherwise in
> CONSPICUOUS LETTERS OR FORMAT DISTINGUISHING it
> from the jungle of clauses and writing in the lengthy agreement;
> (4) plaintiffs lacked meaningful choice when signing the contract
> because similar employment opportunities were not readily
> available, and they had already made arrangements to leave the
> country and left their stateside jobs; and (5) the plaintiffs were
> unsophisticated employees bargaining with a highly sophisticated
> corporation.

Opp. at 17-18 (emphasis in original).  Plaintiffs provide no affidavits to support these claims;

instead, they rely solely on the unverified general allegations of the Complaint.

Given that Plaintiffs provide no evidence for their arguments and Defendants do not even

address this issue, the Court believes the prudent approach is to avoid a resolution.  In any event,

since Plaintiffs have failed to demonstrate any <u>substantive</u> unconscionability, as discussed below, resolution of the procedural issue is not necessary to the outcome.

Substantive unconscionability requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience. A substantively unconscionable contract is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." <u>Hume v. United States</u>, 132 U.S. 406, 411 (1889). To determine substantive unconscionability, courts further consider "whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." <u>EEOC v. Taco Bell of Am., Inc.</u>, No. 06-1792, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007) (citing <u>Palm Beach Motor Cars Ltd., Inc. v. Jeffries</u>, 885 So. 2d 990, 992 (Fla. Dist. Ct. App. 2004)).

Plaintiffs argue that the arbitration provision here is substantively unconscionable because "(1) the agreement and non-attached ADR policy calls for fee-splitting and expense splitting under JAMS rules, which would deter plaintiffs from effectively vindicating their rights; and, (2) the arbitration agreement is excessively one-sided because it does not indicate that [Wackenhut] must arbitrate any disputes it has against employee." Opp. at 20.

As to the first argument, while Plaintiffs conclusorily allege that the cost of arbitration under JAMS is prohibitively expensive, <u>see</u> <u>id.</u> at 21, they provide no record support as to whether or how the costs of arbitration would discourage them from being able to pursue their claims. Plaintiffs quote the "JAMS Case Management Fee" information from the JAMS website – "'the only fee that an employee may be required to pay is the initial JAMS Case Management Fee. This can be as much as $1,000 per person, or $25,000 . . . .'" <u>Id.</u> at 21, n.7 (quoting JAMS

Employment Arbitration Rule 31(c), <u>available at</u> http://www.jamsadr.com/rules-employment-arbitration/). This information, however, does not inform the Court whether Plaintiffs could afford this fee or whether it would inhibit their ability to vindicate their rights.  As in <u>Stewart Agency, Inc. v. Robinson</u>, 855 So. 2d 726 (Fla. Dist. Ct. App. 2003), "[t]here is nothing to show that the expense of arbitration is greater than the expense of litigating the issues or would prevent the appellee from vindicating her statutory rights. Therefore, the record is insufficient to support this as a basis for substantive unconscionability."  <u>Id.</u> at 728-29; <u>see also</u> <u>Palm Beach Motor Cars</u>, 885 So. 2d at 992.

Plaintiffs also argue that the provision is unconscionable because it is "one-sided" in requiring only the employee – and not the employer – to arbitrate disputes.  <u>See</u> Opp. at 20. While the one-sided nature of an arbitration agreement may be relevant to a finding of unconscionability, a court must find additional facts to determine that the agreement is so one-sided as to be unconscionable.  <u>See, e.g.</u>, <u>Taco Bell</u>, 2007 WL 809660, at *1 ("In determining whether an agreement or provision is substantively unconscionable, courts consider whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes."); <u>Hialeah Automotive, LLC v. Basulto</u>, 22 So. 3d 586, 590-91 (Fla. Dist. Ct. App. 2009) (court's unconscionability analysis focused on whether arbitration clause requires plaintiffs to waive rights to which they would otherwise be entitled under common law or statutory law – or to give up legal remedies).  While one case, <u>Palm Beach Motor Cars</u>, 885 So. 2d 990, reached a finding of unconscionability based solely on the one-sided nature of the agreement, the authority it relied on as support for this holding, <u>Bellsouth Mobility LLC v. Christopher</u>, 819 So. 2d 171 (Fla. Dist. Ct. App. 2002), employed a more holistic approach,

basing its unconscionability analysis on a number of factors, rather than looking only at the mutuality of the obligation to arbitrate.  As the bulk of authority in Florida employs an analysis that assesses multiple considerations in determining whether an agreement is unconscionable, the Court will follow a similar approach here.

Plaintiffs in this case have failed to produce evidence to demonstrate the existence of the unconscionability factors discussed in the aforementioned cases.  For example, the arbitration provision here does not limit remedies or exclude punitive damages or equitable relief.  Such a waiver of rights is an important consideration in determining whether the agreement is unconscionable.  See Powertel, 743 So. 2d at 576.  In Powertel, a Florida court found an arbitration clause substantively unconscionable where the agreement required customers to give up legal remedies – e.g., the plaintiffs were foreclosed from seeking punitive damages.  Id. at 576.  The court also noted that an agreement that precluded the possibility of customers pursuing a class action was one-sided and provided an advantage that inured only to one party.  Id.  In contrast, the arbitration provision here does not require Plaintiffs to surrender any of their claims or damages that they could seek in court; it merely substitutes the forum.  As Plaintiffs note, the provision requires them to submit personal injury claims to arbitration, see Opp. at 22; however, while stating the location where such claims must be brought, the provision does not in any way limit the employee's ability to bring or recover for such claims.  Factors that would support unconscionability are thus not present here.  See Avid Engineering, Inc. v. Orlando Marketplace Ltd., 809 So. 2d 1, 5 (Fla. Dist. Ct. App. 2001); cf. Hooters of America, Inc. v. Phillips, 39 F. Supp. 2d 582, 614-15 (D.S.C. 1998) (finding that multiple one-sided provisions in the arbitration rules – including provisions stripping the employee of numerous substantive remedies – were unconscionable).

Plaintiffs, in sum, have not demonstrated the existence of a material factual dispute that could render the arbitration agreement so outrageously unfair as to shock the judicial conscience. The Court, accordingly, finds that the agreement is not substantively unconscionable.

### b.  No Meeting of Minds

Plaintiffs further argue that no valid arbitration provision exists because there was no meeting of the minds.  See Opp. at 31.  "[A] meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract . . . ."  Business Specialists, Inc. v. Land & Sea Petroleum, Inc., 25 So. 3d 693, 695 (Fla. Dist. Ct. App. 2010) (citations omitted).  Under Florida law, "a party to a contract is 'conclusively presumed to know and understand the contents, terms, and conditions of the contract.'"  Rocky Creek Ret. Props., Inc. v. Estate of Fox, 19 So. 3d 1105, 1109 (Fla. Dist. Ct. App.  2009) (quoting Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 166 So. 583, 584 (Fla. Dist. Ct. App. 1936)).  Further, "[a] party has a duty to learn and know the contents of an agreement before signing it, and [a]ny inquiries . . . concerning the ramifications of [the contract] should have been made before signing."  Id. (internal quotations and citation omitted).

Here, Plaintiffs agreed upon an express arbitration provision with Defendants and are thus conclusively presumed to have understood the contents, terms, and conditions of that agreement.  The challenged arbitration clause was written in plain English, and the Court does not find that the "wording" of the agreement or the "lack of any specificity" that Plaintiffs point to, Opp. at 31, creates any factual issues as to whether there was a meeting of the minds.  The language in the arbitration clause is unequivocal: "[A]ll claims that you might have against Employer related to your employment … must be submitted to binding arbitration instead of to the court system."  Employment Agreement, ¶ 27.  While the specifics of the rules that would

govern the arbitration proceedings do not appear to have been appended to the employment

agreement, this cannot tip the balance.  Plaintiffs initialed the specific arbitration provision and

cannot now claim that they did not understand that claims against their employer were subject to

mandatory arbitration.  See Citibank, N.A. v. Dalessio, 756 F. Supp. 2d 1361, 1367-68 (M.D. Fla.

2010) ("As a general matter, '[a] party who signs an instrument is presumed to know its contents

. . . .  He cannot avoid his obligations thereunder by alleging that he did not read the contract, or

that the terms were not explained to him, or that he did not understand the provisions.'") (internal

citations omitted).

The Court thus finds that there is no material dispute regarding a meeting of the minds

with regard to the arbitration clause.

### c.  Duress

As noted above, Section 2 of the FAA permits "generally applicable contract defenses,"

including duress, to "be applied to invalidate arbitration agreements."  Doctor's Assocs., 517

U.S. at 687.  Plaintiffs thus argue that "no valid arbitration agreement was formed" due to the

"personal and economic" duress they faced.  See Opp. at 32.  Specifically, Plaintiffs claim that

"[t]hey simply had to sign" as they were not "free to leave or to engage in any give and take with

the party who drafted the agreement.  They were in a pressure situation in groups."  Id.  While

Plaintiffs attempt to frame their duress challenge as one directed at the arbitration provision, see

id., it appears – based on their own arguments, see id. (describing the circumstances surrounding

the signing of the "14-page confusing form agreement they were required to sign") – that the

alleged duress in this case instead relates to the employment agreement as a whole.  If so, the

question of duress should be resolved in arbitration.  See Prima Paint, 388 U.S. at 403-04;

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 398 & n.11 (5th Cir. 1981).

Even if Plaintiffs' challenge is in fact directed at the arbitration clause, rather than the employment agreement as a whole, they still cannot prevail on such a defense.  To establish duress, a party must show "(1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party."  Woodruff v. TRG-Harbour House, Ltd., 967 So. 2d 248, 250 (Fla. Dist. Ct. App. 1988) (citing McLaughlin v. Fla., Dep't of Natural Res., 526 So. 2d 934, 936 (Fla. Dist. Ct. App. 1988)).  The threshold for duress is thus quite high, and Plaintiffs here have not put forth sufficient evidence to create a factual dispute that the signing of the arbitration provision itself crossed that line.

In Hodgson v. Royal Caribbean Cruises, Ltd., 706 F. Supp. 2d. 1248 (S.D. Fla. 2009), an employee claimed duress where his employment agreement was signed while "he was already aboard the *Sovereign of the Seas* and, if he had not signed them, he would have been stranded in Port Canaveral without money to return to Nicaragua or authorization to work in the United States."  Id. at 1260.  The court rejected this argument, finding that the employee was not under duress, as he had a choice: "a choice either to accept the Agreement and work or reject the Agreement and disembark."  Id. at 1261; see also Henriquez v. NCL (Bahamas), Ltd., 440 Fed. Appx. 714, 716 (11th Cir. 2011) (rejecting employee's duress argument where he claimed that if he did not sign the agreement, he would not have been allowed to stay on the ship to work).  The facts Plaintiffs offer are no worse than these, and they do not provide any contrary authority to demonstrate their weaker showing suffices.  As a result, this defense does not defeat arbitration either.

C.   Scope of Arbitration Agreement

Plaintiffs last argue that even if a valid arbitration agreement existed, the present dispute is "outside the scope of the arbitration clause." Opp. at 23. Defendants respond that "all twelve counts of the Complaint are directly related to the Plaintiffs' employment as firefighters with Wackenhut Services, LLC" and are thus arbitrable. Mot. at 1-2. The Court agrees with Defendants that the claims alleged in the Complaint are comfortably within the scope of the arbitration clause and are thus subject to mandatory arbitration.

As Plaintiffs correctly note, arbitration is required only of those controversies or disputes that the parties have agreed to submit to arbitration. See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Med Partners, Inc., 312 F.3d 1349, 1357 (11th Cir. 2002). Yet, in "applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement . . . [,] due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Sciences, Inc. v. Bd. of Trs. Leland Stanford Junior Univ., 489 U.S. 468, 475–476 (1989).

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint." Gregory v. Electro-Mech. Corp., 83 F.3d 382, 384 (11th Cir. 1996). The scope of the arbitration clause here is very broad, stating that "all claims that you might have against Employer related to your employment … must be submitted to binding arbitration instead of to the court system." Employment Agreement, ¶ 27 (emphasis added). Each count set forth in the Complaint falls under this umbrella. See Compl. ¶¶ 72-137. These allegations challenge: the arbitration clause governing employer/employee relations (Count I); Defendants' breach of the employment contract (Counts II and VI); Defendants' failure to pay

for overtime and on-call time (Count III); fraud in the inducement of the employment contract (Count IV); intentional and negligent misrepresentation regarding Plaintiffs' employment (Count V); fraudulent and deceptive trade practices regarding Plaintiffs' employment (Count VII); civil conspiracy and *prima facie* tort centered around Plaintiffs' employment (Count VIII); and liability under quasi-contract theories related to the employment relationship (Counts IX, X, and XI).   It is hard to see how these are not claims "related to [Plaintiffs'] employment."  As a result, all are subject to arbitration by the express terms of ¶ 27 in the Employment Agreements.

## IV.  Conclusion

The Court, therefore, will grant the Wackenhut Defendants' Motion to Compel Arbitration and Stay Litigation.  To the extent Plaintiffs wish to challenge the contract as a whole, they may still assert such defenses in the arbitration itself.  A separate Order consistent with this Opinion will be issued this day.


**SO ORDERED**.

                                              /s/ James E. Boasberg
                                              JAMES E. BOASBERG
                                              United States District Judge

Date:  June 7, 2012