**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ADAM HILL**, *et al.*,<br><br>    **Plaintiffs,**<br><br>       v.<br><br>**WACKENHUT SERVICES**<br>**INTERNATIONAL**, *et al.*,<br><br>    **Defendants.** | **Civil Action No. 11-2158 (JEB)** |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs filed this action against their employer, Wackenhut Services LLC, and its affiliates, claiming that Defendants owed them unpaid compensation for their work on American military bases overseas.  In response, the Wackenhut Defendants filed a Motion to Compel Arbitration and Stay Litigation, arguing that Plaintiffs were obligated to arbitrate these claims under the mandatory-arbitration provision in their employment agreements.  This Court granted that Motion and sent the case to arbitration, where the arbitrator issued a Partial Final Award determining, as a threshold matter, that Plaintiffs could proceed in the arbitration as a class rather than on an individual basis.  Defendants have now filed a Motion to Vacate that Award on the ground that it exceeded the arbitrator's contractually delegated authority.  The Court disagrees and will deny the Motion.

**I.      Background**

In an ironic twist, Defendants' Motion to Vacate returns this dispute from private arbitration back to federal court just one year after this Court granted their prior motion to stay the litigation and compel Plaintiffs to arbitrate.  <u>See</u> <u>Hill v. Wackenhut Servs. Int'l</u> (<u>Hill I</u>), 865

1

F. Supp. 2d 84 (D.D.C. 2012).  Because the Partial Final Award at issue capably lays out the history of the case, the Court will rely on its recitation to review the relevant facts below.

In 2006, current and former Wackenhut employees initiated a class arbitration against Wackenhut and its affiliates pursuant to the arbitration provision in their employment agreements, claiming that Defendants owed them unpaid compensation for their services as firefighters on American military bases in Iraq and Afghanistan.  See Mot., Exh. 1 (Partial Final Award) at 1, 5.  In those proceedings, Defendants initially argued that the language of the arbitration provision foreclosed class arbitration.  See id.  at 1.  When the arbitrator issued a partial final award holding that the arbitration provision did provide for class arbitration, however, Defendants did not challenge that determination.  See id.

After arbitrating the case for over two years, Defendants entered into a class settlement agreement with the claimants.  See id. at 6.  The arbitrator conditionally certified a class for settlement purposes on December 15, 2009, after which notice of the settlement was issued to approximately 2,087 class members.  See id.  The settlement was finalized on August 3, 2010. See id.  In all, 30 class members opted out of the settlement, 1,337 members submitted claims forms in exchange for settlement payments, and the remaining 720 did neither.  See id.  On August 19, 2010, class counsel submitted an application for confirmation of the class award to the United States District Court for the Northern District of Georgia, to which Defendants consented.  See id.  That court confirmed the order on October 29, 2010.  See id.

In September 2011, Plaintiffs filed this class-action lawsuit against Defendants.  See id. at 1.  Plaintiffs comprise members of the class from the prior case who either opted out of the settlement or neither opted out nor submitted claims forms, and their allegations against Defendants largely mimic the ones made before.  See id. at 1-2.  In response, Defendants filed a

Motion to Compel Arbitration and Stay Litigation, noting that Plaintiffs had signed employment agreements obliging them to arbitrate all their employment-related disputes. <u>See</u> ECF No. 6 (Feb. 6, 2012). This Court agreed and issued an order staying the case and directing Plaintiffs to pursue their claims against Defendants in arbitration. <u>See</u> <u>Hill I</u>, 865 F. Supp. 2d at 99.

The parties marched off to arbitration with JAMS, a private alternative-dispute-resolution provider, and submitted briefs to the appointed arbitrator. <u>See</u> Partial Final Award at 2. In their submission, Defendants argued, *inter alia*, that the arbitrator should dismiss Plaintiffs' class claims because the arbitration clause in their employment agreements did not affirmatively permit class arbitration, as required by the Supreme Court's decision in <u>Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.</u>, 559 U.S. 662 (2010). <u>See</u> Mot., Exh. 7 (JAMS Motion for Partial Dismissal) at 8-11. In their opposition brief, Plaintiffs appeared to concede that under prevailing law the language of the arbitration clause did not support class arbitration, but they nevertheless argued that the doctrines of collateral estoppel, equitable estoppel, and judicial estoppel precluded Defendants from refusing to permit class arbitration, since they had accepted the procedure in the prior arbitration proceedings. <u>See</u> Mot., Exh. 8 (JAMS Opposition) at 14-23. Defendants filed a reply brief asserting that those estoppel rules did not bar them from challenging Plaintiffs' class claims in these circumstances, but Defendants did not in principle contest the arbitrator's authority to apply estoppel doctrines to resolve the dispute. <u>See</u> Opp., Exh. B (JAMS Reply).

On April 23, 2013, the arbitrator issued a Partial Final Award Concerning Class Arbitrability pursuant to Rule 2 of the JAMS Class Action Procedures, which requires JAMS arbitrators to "determine as a threshold matter whether the arbitration can proceed on behalf of or against a class" and to "set forth his or her determination … in a partial final award subject to

immediate court review."  JAMS Class Action Procedures Rule 2

(http://www.jamsadr.com/rules-class-action-procedures/ (last visited September 17, 2013)).  The

arbitrator preliminarily observed that the parties were apparently in agreement that the arbitration

clause did not provide for class arbitration, and he similarly concluded that, construing the clause

in light of <u>Stolt-Nielsen</u>, "class arbitration is not permitted by the language of that clause."

Partial Final Award at 4.

 But that finding did not decide the case because the arbitrator also found that Defendants

were estopped from denying that the instant arbitration could be conducted on a class basis.  As

the arbitrator explained, estoppel rules are "a series of principles or doctrines" that have evolved

over the past several centuries, which "for public policy reasons deemed appropriate by courts,

preclude a party from making certain assertions in the course of judicial and arbitral

proceedings."  <u>Id.</u> at 4.  In an extensive analysis that drew heavily on Supreme Court and circuit

court precedent, the arbitrator concluded that because Defendants had already unsuccessfully

argued in their prior case that the employment agreements precluded class proceedings, and

because Defendants had subsequently settled that dispute to their benefit on a class basis, they

were both collaterally and judicially estopped from denying Plaintiffs the ability to use class

arbitration.  <u>See id.</u> at 7-9, 10-13.  The arbitrator also considered a third estoppel doctrine,

equitable estoppel, but found that it did not apply in these circumstances.  <u>See id.</u> at 9-10.  The

arbitrator therefore concluded that the arbitration could proceed on a class basis, though he noted

that he had not yet ruled on whether Plaintiffs could successfully certify a class.  <u>See id.</u> at 13

n.14.

 Shortly after the arbitrator issued the Partial Final Award, Defendants advised him that

they planned to file a motion to vacate that decision and asked him to stay the arbitration until

their motion had been decided by this Court.  See Mot., Exh. 10 (Order No. 4) at 1.  On June 21,

2013, the arbitrator issued an Order denying that request, to which he added "[o]ne final note."

Id. at 2.  The arbitrator noted that in the two months since he had issued the Partial Final Award,

the Supreme Court had weighed in through its opinion in Oxford Health Plans, LLC v. Sutter,

133 S. Ct. 2064 (2013).  See Order No. 4 at 2.  He explained that his Partial Final Award

received "significant additional support" from Oxford Health, which "held that, even if an

arbitrator's decision is seriously in error, a court may not set it aside as exceeding the arbitrator's

power if the decision is based on a construction of the parties' agreement."  Id. at 2-3 (citing

Oxford Health, 133 S. Ct. at 2070-71).  The arbitrator again analyzed the wording of the

arbitration provision, comparing it to the one in Oxford Health, and concluded, "In construing

the language of [the arbitration provision], as the Supreme Court's opinion in Oxford Health

directs me to do … [and] which was not available when I issued the Partial Final Award, I

conclude that a proper construction of [the arbitration provision] permits Wackenhut employees

to prosecute class arbitrations."  Id. at 3, 4.

Unhappy with the arbitrator's decision, Defendants filed this Motion to Vacate the Partial

Final Award, which brings the case back again to federal court, whence it originally came.  See

ECF No. 26 (June 2, 2013).

## II.      Legal Standard

Judicial review of arbitral awards is "extremely limited."  Kurke v. Oscar Gruss and Son,

Inc., 454 F.3d 350, 354 (D.C. Cir. 2006).  The Federal Arbitration Act does not permit federal

courts "to hear claims of factual or legal error by an arbitrator in the manner that an appeals court

would review a decision of a lower court." Affinity Financial Corp. v. AARP Financial, Inc., 794

F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation mark omitted).  Instead, the FAA lays out

four specific grounds on which a court may vacate an arbitration award, see 9 U.S.C. § 10(a)(1)-

(4), with the burden on the party challenging the award to demonstrate that one of those grounds

exists.  See Al-Harbi v. Citibank, N.A., 85 F.3d 680, 682 (D.C. Cir. 1996).

Defendants invoke § 10(a)(4), the last of the four statutory grounds, which permits a

federal court to set aside an arbitral award if "the arbitrator[] exceeded [his] powers" in issuing

the award.  9 U.S.C. § 10(a)(4).  Because "the task of an arbitrator is to interpret and enforce a

contract, not to make public policy," the Court must vacate an award that disregards the parties'

agreement in favor of the arbitrator's "own view of sound policy."  Stolt-Nielsen, 559 U.S. at

672.  According to Defendants, the Partial Final Award must be vacated in this case because the

arbitrator himself recognized that the arbitration provision did not permit class proceedings, and

therefore his decision to permit class arbitration based on principles of estoppel exceeded his

contractually delegated powers.

In analyzing whether the arbitrator's decision should be vacated under § 10(a)(4), the

burden on Defendants is especially heavy.  See Oxford Health, 133 S. Ct. at 2068.  "Because the

parties bargained for the arbitrator's construction of their agreement, an arbitral decision even

arguably construing or applying the contract must stand" regardless of whether it contains an

error, or even a serious error.  Id. (internal quotation marks omitted).  "It is only when the

arbitrator strays from interpretation and application of the agreement and effectively dispense[s]

his own brand of industrial justice that his decision may be unenforceable."  Major League

Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal quotation marks omitted).

## III.    Analysis

Before proceeding to its analysis, the Court notes that the parties are apparently in

agreement that the issue is ripe for review, and the Court concurs.  See Stolt-Nielsen, 559 U.S. at

670 n. 2 ("The arbitration panel's award means that petitioners must now submit to class

determination proceedings before arbitrators who, if petitioners are correct, have no authority to

require class arbitration. … We think it is clear on these facts that petitioners have demonstrated

sufficient hardship, and that their question is fit for our review at this time.").

 As most readers will have already discerned, the key doctrine for this case comes from

two recent Supreme Court decisions in which the petitioners, like Defendants, sought to use §

10(a)(4) to vacate arbitral awards allowing cases to proceed on a class basis: <u>Stolt-Nielsen</u> and

<u>Oxford Health</u>.  In <u>Stolt-Nielsen</u>, the parties to the arbitration had entered a stipulation that the

language of their contract reflected no agreement on the issue of class proceedings.  <u>See</u> 559 U.S.

at 668-69.  But the arbitral panel in that case nevertheless permitted the claimants to proceed on a

class basis based on "its own conception of sound policy." <u>Id.</u> at 674-75.  Reversing that

decision, the Supreme Court emphasized that "arbitration is a matter of consent, not coercion,"

and that class proceedings "change[] the nature of arbitration to such a degree" that "a party may

not be compelled … to submit to class arbitration unless there is a contractual basis for

concluding that the party <u>agreed</u> to do so."  <u>Id.</u> at 684, 685 (internal quotation marks omitted).

Because "the parties in <u>Stolt-Nielsen</u> concurred that they had reached 'no agreement' on [class

arbitration]," the arbitral panel's order compelling them to proceed on a class basis exceeded its

contractual authority.  <u>Id.</u> at 683, 684.

 In <u>Oxford Health</u>, the parties never stipulated about what their contract said regarding

class arbitration, but instead entrusted that decision to their arbitrator, who interpreted the

language of the agreement to permit class proceedings.  <u>See</u> 133 S. Ct. at 2067.  The petitioner

challenged that conclusion before the Supreme Court, arguing that the arbitrator had exceeded

his authority under <u>Stolt-Nielsen</u> by "impos[ing] class arbitration without a sufficient contractual

basis." <u>Id.</u> at 2069.  The Supreme Court unanimously rejected that argument.  Given the

tremendous deference owed to arbitrators under the FAA, the Court emphasized that courts must

not interfere with an arbitral award "[s]o long as the arbitrator was 'arguably construing' the

contract." <u>Id.</u> at 2070.  It contrasted the facts of the case before it with those in <u>Stolt-Nielsen</u>:

> In <u>Stolt–Nielsen</u>, the arbitrators did not construe the parties'
> contract, and did not identify any agreement authorizing class
> proceedings. So in setting aside the arbitrators' decision, we found
> not that they had misinterpreted the contract, but that they had
> abandoned their interpretive role. Here, the arbitrator did construe
> the contract (focusing, per usual, on its language), and did find an
> agreement to permit class arbitration. So to overturn his decision,
> we would have to rely on a finding that he misapprehended the
> parties' intent. But § 10(a)(4) bars that course: It permits courts to
> vacate an arbitral decision only when the arbitrator strayed from
> his delegated task of interpreting a contract, not when he
> performed that task poorly.

<u>Id.</u>  Because the arbitrator had clearly based his decision on the language of the contract, the

federal courts were bound to uphold it, "however good, bad, or ugly." <u>Id.</u> at 2071.

  <u>Stolt-Nielsen</u> and <u>Oxford Health</u> therefore "fall on opposite sides of the line that §

10(a)(4) draws to delimit judicial review of arbitral decisions." <u>Id.</u> at 2070.  <u>Oxford Health</u>

teaches that a court must uphold an arbitrator's decision to permit class arbitration so long as that

decision is based on an interpretation of the parties' agreement, even if the interpretation is

mistaken.  <u>Stolt-Nielsen</u>, conversely, instructs that a court may not uphold an arbitrator's

decision to permit class arbitration if it does not reflect an interpretation of the parties'

agreement, but instead reflects the arbitrator's personal policy preferences.

  Like any difficult case, this one does not align neatly with past precedent.  The

arbitrator's Partial Final Award compelling the parties to proceed on a class basis makes clear his

conclusion that class arbitration "is not permitted by the language" of the parties' agreement.

Partial Final Award at 4.  But the arbitrator based his decision to permit class arbitration on long-standing rules of estoppel, rather than his own policy predilections.

So where does this case fit?  Because, on closer examination, the estoppel doctrines were incorporated into the employment agreement through its choice-of-law clause, the Court concludes that this case is controlled by <u>Oxford Health</u>, rather than <u>Stolt-Nielsen</u>, and it will accordingly uphold the arbitrator's decision as reflecting an interpretation of the parties' contract.  In conducting its analysis, the Court will begin by considering whether it may look at the arbitrator's modified decision reflected in the "final note."  Concluding that the doctrine of *functus officio* likely prohibits such reliance, the Court will then analyze the Partial Final Award's holding that estoppel doctrines required Defendants to submit to class arbitration.

A.  *Functus Officio*

This would be an easy case if the Court could rely on the arbitrator's second justification for the Partial Final Award permitting class arbitration, which was contained in the "final note" appended to his June 21 order rejecting Wackenhut's motion to stay the proceedings.  In that order, the arbitrator once again analyzed whether the language of the parties' agreement contemplated class arbitration, but unlike in the analysis published in his April 23 Award, on this second look he found "that a proper construction of [the arbitration clause] of the Wackenhut employment agreement <u>permits</u> Wackenhut employees to prosecute class arbitrations."  Order No. 4 at 4 (emphasis added).  That conclusion clearly satisfies the Supreme Court's requirement that "the arbitrator (even arguably) interpret[] the parties' contract," <u>Oxford Health</u>, 133 S. Ct. at 2068; if the arbitrator had adopted this reasoning in his original April 23 Award, the Court would have no trouble denying Defendants' Motion to Vacate.

The Court believes, however, that the doctrine of *functus officio* likely bars it from considering this subsequent justification for permitting class proceedings.  "[T]he *functus officio* doctrine has been routinely applied in federal cases brought pursuant to the Federal Arbitration Act."  Colonial Penn. Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 331 (3d Cir. 1991).  According to the doctrine, "once an arbitrator has made and published a final award[,] his authority is exhausted and he is *functus officio* ['having performed his office'] and can do nothing more in regard to the subject matter of the arbitration."  Washington-Baltimore Newspaper Guilt Local 35 v. Washington Post Co., 442 F.2d 1234, 1238 (D.C. Cir. 1971) (quoting La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 572 (3d Cir. 1967)).  This means that anything an arbitrator does to modify a final award after it has been issued is without effect because at that point the arbitrator "lacks any power to reexamine that decision."  Colonial Penn., 943 F.2d at 331; see also International Broth. of Teamsters v. Silver State Disposal Service, Inc., 109 F.3d 1409, 1411 (9th Cir. 1997).  In this case, the arbitrator's April 23 Award was clearly intended to be final as to the class-arbitration question, and so it exhausted the arbitrator's authority to decide that issue.  See Legion Ins. Co. v. VCW, 198 F.3d 718, 720 (8th Cir. 1999).

Plaintiffs contend that an arbitrator does not modify a decision in violation of *functus officio* when he *sua sponte* offers an additional justification for it, so long as he does so prior to judicial review of the decision.  See Opp. at 4-6.  Yet Plaintiffs cite no case in support of that proposition, and in fact courts applying the doctrine have suggested the opposite.  See, e.g., Bosack v. Soward, 586 F.3d 1096, 1103 (9th Cir. 2009) ("[F]unctus officio … forbids an arbitrator to redetermine an issue which he has already decided.") (emphasis added) (internal quotation marks omitted); WMA Sec. Inc. v. Wynn, 32 F.App'x 726, 729 (6th Cir. 2002)

("[F]*unctus officio* prevents arbitrators from <u>revisiting</u> a final award.") (emphasis added);

<u>International Broth.</u>, 109 F.3d at 1411 ("Once an arbitrator has made and published a final award

… [he] can do <u>nothing more</u> in regard to the subject matter of the arbitration.") (emphasis added)

(internal quotation marks omitted); <u>see also</u> <u>The College of Commercial Arbitrators Guide to</u>

<u>Best Practices in Commercial Arbitration</u> 200-201 (Curtis E. von Kann *et al.* eds., 1st ed. 2006)

("Occasionally, the exercise of attempting to clarify an award reveals that the reasoning that gave

rise to the original award was erroneous.  In such a circumstance, arbitrators must avoid the

impulse to correct the substantive error in the original award and must recognize that their

original determination is final and that they are without power to correct it.").  Furthermore, in

the instant case, the arbitrator's June 21 Order did not just provide "supplemental support" for

his April 23 Award, <u>see</u> Opp. at 6, but entirely contradicted his earlier reasoning.  <u>Compare</u>

Partial Final Award at 4 ("[C]lass arbitration is not permitted by the language of [the arbitration]

clause.") <u>with</u> Order No. 4 at 3 ("[T]he language of the [arbitration clause] does permit class

arbitration.").  There are three "narrowly drawn" exceptions to the *functus officio* rule, <u>see</u>

<u>Teamsters Local 312 v. Matlack, Inc.</u>, 118 F.3d 985, 992 (3d Cir. 1997), but they permit only

"clarification or completion, as distinct from alteration, of the arbitral award," <u>Glass, Molders,</u>

<u>Pottery, Plastics, and Allied Workers International Union v. Excelsior Foundry Co.</u>, 56 F.3d 844,

847 (7th Cir. 1995), and so do not apply to this case, where the Partial Final Award was perfectly

clear and complete on its own.  Plaintiffs do not contend otherwise.

The Court thus concludes that the *functus officio* doctrine bars it from considering the

additional justification for the Partial Final Award contained in the arbitrator's June 21 Order.

Defendants' Motion therefore turns on whether the original justifications provided in the Partial

Final Award suffice for the Court to uphold the arbitrator's decision to permit class arbitration.

B.  Estoppel and § 10(a)(4)

To reiterate, the arbitrator's decision in his Partial Final Award relied on the doctrines of collateral and judicial estoppel.  Defendants argue that these estoppel doctrines merely reflected the arbitrator's "own conception of sound policy" and therefore exceeded his contractually delegated authority.  Stolt-Nielsen, 559 U.S. at 675; see also 9 U.S.C. § 10(a)(4).  Upon careful consideration, however, the Court concludes that the arbitrator did not exceed his powers by permitting class arbitration on that basis.  To see why he had the authority to employ rules of estoppel, even after he had concluded that "class arbitration is not permitted by the language of [the arbitration] clause," Partial Final Award at 4, the Court must take a closer look at the Stolt-Nielsen decision.

The problem the Supreme Court addressed in Stolt-Nielsen was not simply that the arbitral panel permitted class arbitration when the contract was silent on the matter, but that "instead of identifying and applying a rule of decision derived from [the law governing the contract], the arbitration panel imposed its own policy choice."  Id. at 676-77 (emphasis added); see also Oxford Health, 133 S. Ct. at 2070.  According to the Supreme Court, once the arbitral panel in Stolt-Nielsen determined that the contract contained no agreement on class arbitration, "its proper task was to identify the rule of law that govern[ed] in that situation" and then to "inquir[e] whether [that law] contain[ed] a 'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent."  Stolt Nielsen, 559 U.S. at 676.  Instead, the arbitral panel exceeded its powers by neglecting the relevant contract law in favor of "its own policy preference."  Id. at 673.  The clear implication, therefore, is that the panel could have compelled class proceedings even in the absence of the parties' agreement if the law governing the contract had instructed it to do so.  Presumably, that decision would not

12

have violated the principle that class arbitration "is a matter of consent, not coercion," id. at 681

(internal quotation marks omitted), because the parties would have consented both to the choice-

of-law clause in their agreement and to the choice-of-law rules of the arbitral body to which they

submitted their dispute.

In this case, the employment agreement to which Defendants and Plaintiffs bound

themselves contained a choice-of-law clause specifying that it was to be governed by and

construed in accordance with Florida law, "except that with respect to all matters or disputes

related to the validity or enforceability of [the arbitration clause], all issues shall be governed by

and construed in accordance with the Federal Arbitration Act."  Motion to Compel Arbitration,

Exh. 1 (Employment Agreement) at 12.[1]  In turn, the JAMS Class Action Procedures, to which

Wackenhut and Plaintiffs also subjected themselves, instructed that the arbitrator should

determine whether class arbitration was permissible "by following the law applicable to the

validity of the arbitration clause as a whole, or the validity of any of its terms."  JAMS Class

Action Procedures Rule 2 (http://www.jamsadr.com/rules-class-action-procedures/ (last visited

September 17, 2013)).  Linked together, these two choice-of-law rules make clear that

Defendants and Plaintiffs both effectively agreed that the arbitrator should apply the FAA to

determine whether the arbitration clause in their employment agreements permitted class

proceedings.

The FAA on its own, unfortunately, says practically nothing about how an arbitrator

should determine whether a contract provides for class arbitration.  Given that the Wackenhut

employment agreement appears to suggest that Florida law should not be used to interpret the

arbitration provision, and that the FAA is a federal statute, it seems perfectly reasonable that the

---

[1] The choice-of-law clause contained a typo seeming to suggest that a different clause, concerning group insurance rather than arbitration, should be governed by the FAA, but Defendants acknowledged and corrected this clerical error before the arbitrator and Plaintiffs did not contest it.  See JAMS Motion to Dismiss at 8 n.4.

arbitrator in this case would apply <u>federal law</u> to resolve the class-arbitration question.  That is exactly what he did, <u>see</u> Partial Final Award at 7-9, 10-13, without objection from either side. And federal law, of course, includes the well-established doctrines of collateral and judicial estoppel.  <u>See, e.g.</u>, <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-51 (2001) (judicial estoppel); <u>Parklane Hosiery Co., Inc. v. Shore</u>, 439 U.S. 322, 326-336 (1979) (collateral estoppel).  Even if the arbitrator was meant to apply Florida instead of federal law, that law also includes both collateral- and judicial- estoppel rules.  <u>See, e.g.</u>, <u>Blumberg v. USAA Cas. Ins. Co.</u>, 790 So. 2d 1061, 1066 (Fla. 2001) (judicial estoppel); <u>Gordon v. Gordon</u>, 59 So. 2d 40, 44 (Fla. 1952) (collateral estoppel).  Since the employment agreement's choice-of-law clause incorporated the federal-law – or Florida-law – principles of estoppel on which the Partial Final Award relied, the arbitrator's decision to invoke those doctrines "dr[e]w[] its essence from the contract," not "[his] own notions of [economic] justice."  <u>See</u> <u>Oxford Health</u>, 133 S. Ct. at 2068 (internal quotation marks omitted).   In the final analysis, then, this case falls on the <u>Oxford Health</u>, rather than the <u>Stolt-Nielsen</u>, side of the line.

Use of estoppel doctrines in the arbitration context, furthermore, is hardly unusual. Arbitrators are bound by estoppel doctrines, <u>see</u> <u>Aircraft Braking Systems Corp. v. Local 856, International Union</u>, 97 F.3d 155, 159 (6th Cir. 1996) (collecting cases); <u>Miller v. Runyon</u>, 77 F.3d 189, 193-94 (7th Cir. 1996) (same), and past arbitration awards can have preclusive effect in later disputes.  <u>See, e.g.</u>, <u>Lewis v. Circuit City Stores, Inc.</u>, 500 F.3d 1140, 1147-48 (10th Cir. 2007); <u>Manion v. Nagin</u>, 394 F.3d 1062, 1066-67 (8th Cir. 2005).  Federal courts, moreover, sometimes use estoppel doctrines in order to bind parties to arbitration clauses that they never actually signed, thus compelling them to participate in arbitrations to which they did not affirmatively consent.  <u>See, e.g.</u>, <u>Invista S.A.R.L. v. Rhodia, S.A.</u>, 625 F.3d 75, 85 (3d Cir.

2010); Thomson-CSF, S.A. v. American Arbitration Assoc., 64 F.3d 773, 778 (2d Cir. 1995).  If

arbitration-by-estoppel does not violate the principle that arbitration is a matter of consent, then

the Court sees no reason why class-arbitration-by-estoppel should either.

The balance of Defendants' challenge to the Partial Final Award takes up the merits of

the arbitrator's estoppel analysis.  But because the arbitrator's decision to apply the estoppel

rules was derived from the employment agreement, Oxford Health requires this Court to uphold

his decision even if his analysis of those rules was erroneous.  See Oxford Health, 131 S. Ct. at

2070-71.  Defendants might have instead framed their attack on the merits of the arbitrator's

estoppel analysis as a "manifest disregard of the law" challenge rather than a § 10(4)(a)

challenge, LaPrade v. Kidder, Peabody & Co., Inc., 246 F.3d 702, 706 (D.C. Cir. 2001), but they

would have been equally unsuccessful.  For the Court to vacate the Award on that ground,

Defendants would have to establish that: (1) the arbitrator "knew of a governing legal principle

yet refused to apply it or ignored it all together" and (2) the law that the arbitrator ignored "was

well defined, explicit, and clearly applicable to the case."  Id. at 706.  Defendants cannot meet

this burden since their only critique of the arbitrator's analysis is that he failed to take account of

an intervening change of law that occurred between the time that they settled the prior arbitration

and the start of this case, see Mot. at 9, and the arbitrator in fact addressed that precise issue in

the Partial Final Award.  See Partial Final Award at 9.  Having sought out the wisdom of the

arbitrator, Defendants cannot now relitigate their dispute before this Court.

IV.     **Conclusion**

Defendants "chose arbitration, and [they] must now live with that choice."  Oxford

Health, 131 S. Ct. at 2071.  The Court will deny Defendants' Motion to Vacate the Arbitrator's

Partial Final Award Concerning Class Arbitrability.  A separate Order consistent with this

Opinion will be issued this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 18, 2013